LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHANIE THOMPSON, *on behalf of herself and all others similarly situated*, | Case No.: 20-cv-651 |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| GLOBAL CONTACT SERVICES, LLC, EUGENE OHEMENG, FRANK CAMP, ANTOINETTE CURRIE, and JAMIE HOFFMAN, | JURY TRIAL DEMANDED |
| Defendants. | |

---

## COMPLAINT

Plaintiff STEPHANIE THOMPSON ("Plaintiff") on behalf of herself and all others similarly situated, by and through her undersigned attorneys, as and for her Complaint against Defendants GLOBAL CONTACT SERVICES, LLC ("GCS"), EUGENE OHEMENG ("Ohemeng"), FRANK CAMP ("Camp"), ANTOINETTE CURRIE ("Currie"), and JAMIE HOFFMAN ("Hoffman") (Camp, Currie, and Hoffman collectively referred to herein as "Management Defendants"; Ohemeng and Management Defendants collectively referred to herein as "Individual Defendants"; GCS and Individual Defendants collectively referred to herein as "Defendants"), alleges on information and belief as follows:

## INTRODUCTION

1.      Plaintiff brings this action on behalf of herself and all others similarly situated to recover unpaid wages, overtime wages, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6, 7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2.      Plaintiff and others similarly situated worked for GCS as call center representatives.  Plaintiff and others similarly situated regularly worked in excess of 10 hours per day, but were not compensated for all of the hours they worked as required under the FLSA and NYLL.

3.      Additionally, Plaintiff seeks damages and other relief under New York Executive Law § 296 ("NYHRL"), and New York City Administrative Code § 8-107 ("NYCHRL") for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff, and for retaliatory termination in response to her complaints about said harassment. Plaintiff additionally seeks damages and other relief under the common law of the State of New York for battery and intentionally infliction of emotional distress.

4.      Plaintiff was subjected to regular, shocking sexual harassment and abuse at the hands of Defendant Ohemeng.  Plaintiff repeatedly complained to her supervisors about this conduct, but her complaints were ignored.  After months of working in close proximity to her abuser with no help or protection from her employer, Plaintiff was forced to choose between feeling safe or keeping her job.

## PARTIES, JURISDICTION, AND VENUE

5.      At all times relevant herein, Plaintiff was and is a resident of the State of New York, New York County.  Plaintiff's consent to sue is submitted herewith as Exhibit 1.

6.      At all times relevant herein, Defendant GCS was and is a Delaware limited-liability corporation duly registered with and doing business by virtue of the laws of the State of New York, with a principal place of business at 3300 Northern Boulevard, Long Island City, New York.

7.      GCS engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that GCS transacts with vendors located outside of New York and employees of GCS handle goods and materials produced outside of New York (including computers, telephone equipment, and other items) that have moved in interstate commerce, and GCS is thus an employer subject to the jurisdiction of the FLSA.

8.      At all times relevant herein, Defendant Ohemeng was and is a citizen of the State of New Jersey, Hudson County.  Ohemeng is currently incarcerated at the Otis Bantum Correctional Center, Queens County, for charges related to the conduct described herein.

9.      At all times relevant herein, Defendant Camp was and is a citizen and resident of the State of New York, Suffolk County.

10.     At all times relevant herein, Camp was and is an owner, member, officer, director, and/or manager of GCS.

11.     At all times relevant herein, Defendant Currie was and is a citizen and resident of the State of New York, Suffolk County.

12.     At all times relevant herein, Currie was an executive of GCS and/or otherwise an

owner, member, officer, director, and/or manager of GCS.

13.     At all times relevant herein, Defendant Hoffman was and is a citizen of the State of New Jersey, Morris County.

14.     At all times relevant herein, Hoffman was an executive of GCS and/or otherwise an owner, member, officer, director, and/or manager of GCS.

15.     In their capacities as owners, members, officers, directors, and/or managers of GCS, the Management Defendants have at all times relevant herein exercised operational control over GCS and the terms and conditions of the employment of Plaintiff and all others similarly situated.  Specifically, with respect to Plaintiff and other employees, the Management Defendants had the power and authority to (i) hire and fire employees, (ii) set their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment.  At all times relevant herein, the Management Defendants exercised functional control over the business and financial operations of GCS, and had authority over all employee-related decisions, including specifically but without limitation payroll, personnel, and wage and hour policies concerning Plaintiff and all others similarly situated.

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

17.     This Court has personal jurisdiction over GCS in that it maintains a place of business therein and does significant business within the state and derives significant profits thereby.

18.     This Court has personal jurisdiction over Camp and Currie in that they are citizens and residents of the State of New York.

19.     This Court has personal jurisdiction over Ohemeng in that he is currently incarcerated within the State of New York.

20.     This Court has personal jurisdiction over Hoffman in that she maintains substantial contacts with the State of New York and does significant business therein.

21.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because one or more Defendants reside in this district and several of the events giving rise to Plaintiff's claims occurred herein.

## JURY DEMAND

22.     Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

23.     GCS owns and operates a call center which contracts with Access-A-Ride (an instrumentality of the New York City Transit Authority, the Metropolitan Transit Authority, and/or the City and/or State of New York), a program which provides transportation services to individuals with disabilities or health problems which prevent them from using public transportation.

24.     Plaintiff and others similarly situated worked at GCS as call center representatives, handling calls from Access-A-Ride customers.  Plaintiff worked at GCS from January 7, 2019 until her constructive termination in September 2019.  She was paid a wage of $15 per hour.

25.     The typical weekly work schedule for Plaintiff and others similarly situated was

11 hours per day, 4 days a week.  During Plaintiff's employment at GCS, her typical weekly

work schedule was 6:55 A.M. until 6:00 P.M. Friday through Monday.

26.    Despite routinely working over 10 hours per day throughout their employment

with GCS, Plaintiff and others similarly situated never received spread-of-hours compensation as

required under the NYLL.

27.    Additionally, GCS had several timekeeping and payroll policies that functioned to

reduce the paid hours of Plaintiff and others similarly situated in violation of the FLSA and

NYLL.

28.    GCS uses two separate systems to track employees' hours: a standard ADP

timekeeping system, and a system tracking employees' time on the phone.  Plaintiff and others

similarly situated would have to log in to both of these systems prior to having their time

recorded for the day, and any discrepancies between the two systems would be resolved against

the workers.  In other words, if ADP recorded that an employee clocked in at 7:05 A.M. and

clocked out at 5:58 P.M. with two 15-minute breaks and therefore showed 11 hours and 23

minutes of work, but the phone system (for whatever reason) only showed 3 hours of work, the

employee would only be paid for 3 hours that day.

29.    Moreover, the process of merely logging in to both systems would often take

several minutes every day – time for which employees were not compensated.

30.    No matter how early the employees arrived at work, they could not log into ADP

earlier than 3 minutes before their shift was scheduled to begin.  Then if they did not complete

the log-in process before 1 minute after their shift was scheduled to begin, their log-in would be

flagged and they would be called to their supervisor for discipline.  In such a case the first ten

minutes of their shift would not be paid, and neither would the time the employee spent being

reprimanded for their late log-in.  To make matters worse, the process of logging in to ADP takes about 3-4 minutes, leaving the employees an impossibly small window of time to complete their log-in without being subjected to a dock in pay.

31.    The phone tracking system also created several complexities for timekeeping. Any time that employees spent off the phone during their shift would not be counted, whether that time was spent in required meetings, training, administrative tasks, bathroom breaks, or any other task.  Even time spent on the phone could be discounted, as the system would log employees out if they took too long on a call, were on hold or getting a busy signal, or had a call drop or a customer hang up.  Several of these events would trigger a disciplinary meeting with their supervisor, which would result in further unpaid time.

32.    The computers and phones used for clocking in and out were also frequently defective.  These defects caused log-in delays which resulted in additional unpaid time for Plaintiff and others similarly situated.

33.    As a result of GCS's timekeeping policies, Plaintiff and others similarly situated were routinely not paid for a significant amount of worked time per week.

34.    GCS also failed to record the unpaid time Plaintiff and others similarly situated worked, and thereby failed to make and keep accurate payroll records in violation of the FLSA and NYLL.

35.    GCS also failed to provide Plaintiff and others similarly situated with accurate wage notices and wage statements, in violation of the NYLL.

36.    At all relevant times GCS and the Management Defendants were joint employers of Plaintiff and others similarly situated as a matter of economic reality, and as a result, GCS and the Management Defendants are jointly and severally liable for all claims made under the FLSA

and NYLL.

37.     GCS and the Management Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked, and to make and preserve proper payroll records.

38.     However, GCS and the Management Defendants knowingly failed to pay Plaintiff and others similarly situated all of the wages to which they were entitled, and to make and preserve proper payroll records.

39.     As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by GCS and the Management Defendants.

40.     Furthermore, these violations are ongoing, as GCS and the Management Defendants continue to engage in the wrongful conduct described herein.

*Sexual Harassment and Assault Allegations*

41.     In addition to the wage and hour violations, Defendants also created and fostered a hostile work environment in the form of regular and horrifying sexual harassment, culminating in sexual assault.

42.     Throughout Plaintiff's employment with GCS, she worked on the same floor as Ohemeng, a fellow call center representative.

43.     Plaintiff was subject to regular sexual harassment from Ohemeng throughout her employment.  Ohemeng's harassment of Plaintiff and other female employees took many and varied forms.  Ohemeng regularly asked Plaintiff out, and accused her of playing games or called her a "tease" or a "bitch" when she rejected him.  Ohemeng would regularly make sexual comments to Plaintiff.  One of his favorite conversation topics with Plaintiff and other female

employees was his penis, which he regularly invited Plaintiff to see or touch. Ohemeng opined in front of Plaintiff and other female employees that he considered all women to be "gold diggers," "whores," or "holes to fuck."

44.    Over time, the nature of Ohemeng's harassment of Plaintiff became more aggressive. He began making physical contact with Plaintiff in a sexual manner. On the first occasion, while sitting next to Plaintiff, Ohemeng rubbed her leg under her desk. Plaintiff pushed Ohemeng's hand away and told him to stop, but Ohemeng repeated this behavior on several occasions in spite of Plaintiff's protests.

45.    Ohemeng's harassment continued to escalate. Ohemeng would approach Plaintiff at work and reach under her dress to grab her buttocks. Plaintiff would complain, push him away, and try to grab his hands as he approached to keep him from touching her in this manner, but Ohemeng persisted.

46.    Once, while Plaintiff was resting in the break room, Ohemeng approached her with his penis out of his pants and asked her to touch it. When Plaintiff told Ohemeng to go away, he grabbed her hand to make her touch his penis. Plaintiff fought to get her hand free and told Ohemeng that if he didn't let her go she would kick him, at which point he released her. Ohemeng then called Plaintiff a "tease," and went back to the main work area and told all of Plaintiff's co-workers that she was a tease.

47.    Plaintiff attempted to physically separate herself from Ohemeng as much as possible after the break room incident, but he continued to approach her regularly and make inappropriate comments or attempt to touch her in a sexual manner. At one point he texted her an unsolicited picture of his penis, and then afterwards again accused Plaintiff of being a "tease" when she did not respond positively to his romantic gesture.

48.    Ohemeng continued to harass Plaintiff with similar remarks, taunts, threats, and other behavior throughout her employment with GCS.  The constant abuse was a source of extreme physical, mental, and emotional discomfort for Plaintiff.  On at least one occasion she vomited at work from the stress.  At many other times she felt unsafe, depressed, anxious, and exhausted from the toll his abuse put on her.  Facing such treatment on a daily basis seriously disrupted Plaintiff's work and altered her working conditions.

49.    Plaintiff repeatedly complained to her supervisors and management about Ohemeng's comments and behavior, but other than Ohemeng being asked to move to the other side of the work area (he was still free to walk over and harass Plaintiff), nothing was ever done.  Rather than discipline Ohemeng, Plaintiff was accused of being a troublemaker and problematic employee.  On at least one occasion after Plaintiff complained about Ohemeng, Plaintiff's immediate supervisor, Ms. Brown ("Brown"), warned her that "snitches get stitches."

50.    In addition to the harassment from Ohemeng, Plaintiff began to feel uncomfortable around her other co-workers.  Working at GCS required no specialized skills or experience, and GCS conducted little or no background checks on their employees; as such, many of the employees at GCS had criminal histories or similar backgrounds that would bar them from other employment.  Among such a crowd Ohemeng was quite popular, and several of her co-workers treated her in a hostile or threatening manner after she began complaining about Ohemeng.

51.    In or around early August 2019, Plaintiff sent a written report to the human resources department of GCS regarding her harassment by Ohemeng.  The report contained detailed descriptions of the Ohemeng's comments and behavior, including the groping, break room assault, exposure, and penis picture.  In response to Plaintiff's report, on or around August

21, 2019, Plaintiff was called into a meeting with Currie, Hoffman, and other personnel ("Meeting").

52. At the Meeting, Plaintiff discussed her abuse in detail, stated that she was fearful for her safety, and asked that she be allowed to move to a different floor away from Ohemeng and other co-workers with whom she no longer felt comfortable. Plaintiff was then told by Currie and Hoffman that she would not be allowed to relocate away from the man who grabbed her buttocks and took his penis out in front of her until sometime after HR completed its investigation. Plaintiff was further directed not to talk to anyone else about her abuse until the investigation was completed.

53. After the Meeting, Plaintiff felt increasingly threatened and uncomfortable around Ohemeng and others on her floor, including her supervisor. To make matters worse she had not yet received any word about the status of the HR investigation or when it would be completed. Around this time Plaintiff filed a criminal charge against Ohemeng with the New York City Police Department.

54. During one of her shifts after the Meeting, Plaintiff was physically confronted at her desk by Brown and another co-worker. As Plaintiff finished up her shift, her supervisor, Brown approached Plaintiff's desk and asked her why she was still there. When Plaintiff replied that she was entering her time, Brown told her she needed to get out, and proceeded to pace behind Plaintiff's desk in an aggressive manner until she finished her work. Plaintiff understood this to be a threat that she (Plaintiff) had to leave her employment as GCS. Shortly after the interaction with Brown, Plaintiff was physically accosted by another co-worker, who bumped into her in an aggressive manner.

55. After this confrontation, and following the abuse she suffered at the (literal) hands

of Ohemeng, the hostility she experienced from other co-workers, and the indifference with

which her complaints to supervisors and management were received, Plaintiff did not feel safe

returning to GCS.  On August 29, 2019, Plaintiff emailed staff from the New York City Transit

Authority (with whom GCS was contracted) about her circumstances:

> To whom it may concern:
>
> My name is Stephanie Thompson and my [sic] writing to inform HRA and my
> manager that I am uncomfortable coming into work.
>
> I've made it very clear that I was being harassed by peers and immediate
> supervisors.  Until now, there has been no solutions given, or resolutions to any of
> the reports I've made.  I've been humiliated, and I am continuously being
> victimized by my peers and supervisors.  I've asked to be protected, and I wasn't.
> I asked for my floor to be changed and it wasn't.  I am pleading with you for
> something to be done to ensure my safety and well being.  This is not a
> resignation letter.  This is just another attempt to resolve this matter in a
> professional way.  No one should have to deal with what I put [up] with when I
> come to work, and I am asking for help.

56.    Plaintiff resolved to wait for a response to her August 29 email before she

returned to work.

57.    On or around August 30, Plaintiff received a call from Hoffman.  During the call

Plaintiff was told that if she did not return to work immediately she would be fired.  Plaintiff

asked Hoffman if Ohemeng was still working there, and Hoffman said that he had been fired.

Plaintiff subsequently learned that Ohemeng was still working at GCS at this time.

58.    In or around early September, Plaintiff received a letter from Hoffman dated

September 3, 2019 ("September 3 Letter").  The September 3 Letter indicated receipt of

Plaintiff's August 29 email, and responded *inter alia* as follows:

> You were informed at [the Meeting] to keep everything confidential,
> which you declined to do . . .  Further, you were informed that HR did not make
> decisions whether you could be moved to another floor but that we would
> advocate on your behalf to operations after we completed our investigation. . . .
>
> As of the [sic] August 31, 2019 you have not returned to work.  You are

not on an approved leave and the Company was still investigating your complaint.
Just because a request to move floors was made does not mean that the Company
has to immediately approve your request.

59.    The September 3 Letter further directed Plaintiff to "immediately return to
work," and threatened that "[a]dditional unapproved absences[] may result in disciplinary action
up-to [sic] and including termination."

60.    The September 3 Letter represented that Plaintiff's request to change floors had
been granted (despite stating in the same letter that HR told Plaintiff her request could not be
granted until after the investigation was completed), and that Plaintiff had not been informed
because she stopped coming to work.  Curiously, Hoffman had made no reference to Plaintiff's
request being approved during his August 30 call.  Nor did the September 3 Letter offer any
explanation as to why no prior attempts were made to contact Plaintiff to let her know that her
request to change floors had been approved.

61.    Plaintiff heard from former co-workers that Ohemeng was still working at GCS
on or after this time.  Fearing for her safety and distrustful of GCS management, Plaintiff never
returned to work at GCS.

62.    GCS finally fired Ohemeng sometime later in September 2019.  In or around
October 2019, Ohemeng was arrested and charged with forcible touching, a Class A
misdemeanor.  Plaintiff subsequently learned that while Ohemeng was employed at GCS he was
on parole for first-degree robbery, a Class B felony.

63.    Plaintiff was and continues to be highly traumatized by her experiences with
Ohemeng and GCS, and continues to suffer from extreme stress and depression as a
consequence.

*FLSA Collective Action Allegations*

64.    Plaintiff brings her claims for relief under the FLSA as a collective action

pursuant to Section 16(b) of the FLSA on behalf of herself and all other call center

representatives employed by GCS on or after the date that is six years before the filing of the

initial Complaint in this case ("FLSA Collective Plaintiffs").

65.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and

have been similarly situated, have had substantially similar job requirements and pay provisions,

and are and have been subjected to GCS's decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them proper regular and overtime wages for their off-the-clock work. The FLSA claims of

Plaintiff as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

66.    The claims for relief are properly brought under and maintained as an opt-in

collective action pursuant to Section 16(b) of the FLSA.  The FLSA Collective Plaintiffs are

readily ascertainable.  For purposes of notice and other purposes related to this action, their

names and addresses are readily available from GCS.  Notice can be provided to the FLSA

Collective Plaintiffs via first class mail to the last address known to GCS.

*Class Action Allegations*

67.    Plaintiff brings her claims for relief under the NYLL pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of herself and all other call center representatives

employed by GCS on or after the date that is six years before the filing of the initial Complaint in

this case ("Class Period").

68.    All said persons, including Plaintiff, are referred to herein as the "Class."  The

members of the Class are readily ascertainable.  The number and identity of the members of the

Class are determinable from GCS's records.  The hours assigned and worked, the positions held,

and rates of pay for each Class member are also determinable from GCS's records.  For purposes

of notice and other purposes related to this action, their names and addresses are readily available from GCS.  Notice can be provided by means permissible under Rule 23.

69.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of GCS, there is no doubt that there are more than forty (40) members of the Class.

70.     Plaintiff's NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of GCS of (i) failing to pay spread-of-hours wages for work days in which Class members worked greater than 10 hours; (ii) failing to pay proper wages for off-the-clock work; and (iii) failing to provide proper wage statements that were in compliance with the requirements under the NYLL.  GCS's corporate-wide policies and practices affected all Class members similarly, and GCS benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff sustained similar losses, injuries, and damages as other Class members, with such injuries and damages arising from the same unlawful policies, practices, and procedures.

71.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

72.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

73.    When wage and hour violations arise, current and former employees are often afraid to assert their rights.  Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment.  Class actions provide class members who are not named in the complaint a degree of anonymity,

which allows for the vindication of their rights while eliminating or reducing these risks.

74.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.   Whether GCS employed Plaintiff and other Class members within the meaning of the NYLL;

    b.   What are and were GCS's policies and procedures regarding the types of work and labor for which Defendant did not pay the Class members properly;

    c.   At what common rate, or rates subject to common methods of calculation, was and is GCS required to pay the Class members for their work;

    d.   Whether GCS properly notified Plaintiff and other Class members of their hourly rate and overtime rate;

    e.   Whether GCS provided proper wage statements and wage and hour notices to Plaintiff and other Class members per the requirements of the NYLL;

    f.   Whether GCS properly paid Plaintiff and other Class members spread-of-hours compensation per the requirements of the NYLL; and

    g.   Whether GCS properly compensated Plaintiff and other Class members for all hours worked under the NYLL.

### FIRST CAUSE OF ACTION
### (FLSA Collective Action against GCS and the Management Defendants)

75.   Plaintiff repeats each and every previous allegation as if fully set forth herein.

76.   At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of GCS within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

77.   At all relevant times GCS was an employer within the meaning of the FLSA.

78.     At all relevant times GCS and the Management Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

79.     As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for GCS and the Management Defendants for which they were not paid, in violation of the FLSA.

80.     GCS and the Management Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, when GCS and the Management Defendants knew or should have known such was due.

81.     As a direct and proximate result of GCS and the Management Defendants' willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages.  Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action against GCS and the Management Defendants)

82.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

83.     At all relevant times Plaintiff and the other Class members were employees of GCS within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

84.     At all relevant times GCS was an employer within the meaning of the NYLL.

85.     At all relevant times GCS and the Management Defendants were joint employers of Plaintiff and the other Class members.

86.     As alleged herein, Plaintiff and the other Class members regularly worked in

excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including regular, overtime, and spread-of-hours wages.

87.    GCS and the Management Defendants also failed to provide Plaintiff and the other Class members with accurate wage statements, as required under the NYLL.

88.    GCS and the Management Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and the other Class members all of the wages they were due (including regular, overtime, and spread-of-hours wages) when GCS and the Management Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

89.    As a direct and proximate result of GCS and the Management Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages.  Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

### THIRD CAUSE OF ACTION
### (NYHRL Discrimination against all Defendants)

90.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

91.    At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

92.    At all relevant times, GCS was and continues to be an employer within the meaning of the NYHRL.

93.    At all relevant times, GCS had at least four persons in its employ, and therefore GCS and its agents and employees were and are required to comply with the NYHRL.

94.    Section 296(1)(a) of the NYHRL prohibits employers from discriminating against

an employee because of sex "in terms, conditions or privileges of employment."

95.     Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

96.     Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

97.     Defendants violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

98.     This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

99.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

100.    GCS was on notice of the conduct constituting the hostile work environment and took no action to resolve it.  Specifically, Plaintiff complained to her supervisors and other management personnel on several occasions about the abuse she was subject to, but managemnet took no steps to stop it.  GCS's failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

101.    Indeed, rather than address the abuse against Plaintiff, GCS instructed her to return to work or be terminated.

102.    GCS's constructive termination of Plaintiff after she refused to return to work

until her sexual harassment complaints were addressed constituted a retaliatory termination in violation of Section 296(7) of the NYHRL.

103.    Ohemeng's comments and behavior in furtherance of the hostile work environment to which Plaintiff was submitted was in violation of Section 296(6) of the NYHRL.

104.    The Management Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff, Ohemeng, and other employees, were aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for her complaints, in violation of Sections 296(6) and 296(7) of the NYHRL.

105.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

106.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYHRL.

## FOURTH CAUSE OF ACTION
### (NYCHRL Discrimination against all Defendants)

107.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

108.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

109.    At all relevant times, GCS had at least four persons in its employ, and therefore Defendant and its agents and employees were and are required to comply with the NYCHRL.

110.    Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

111.    Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

112.    Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

113.    Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

114.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

115.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

116.    GCS was on notice of the conduct constituting the hostile work environment and took no action to resolve it.  Specifically, Plaintiff complained to her supervisors and other management personnel on several occasions about the abuse she was subject to, but managemnet took no steps to stop it.  GCS's failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

117.    Indeed, rather than address the abuse against Plaintiff, GCS instructed her to return to work or be terminated.

118.    GCS's constructive termination of Plaintiff after she refused to return to work until her sexual harassment complaints were addressed constituted a retaliatory termination in

violation of Section 8-107(7) of the NYCHRL.

119.    Ohemeng's comments and behavior in furtherance of the hostile work environment to which Plaintiff was submitted was in violation of Section 8-107(6) of the NYCHRL.

120.    The Management Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees, were aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for her complaints, in violation of Section 8-107(6) and (7) of the NYCHRL.

121.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

122.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## FIFTH CAUSE OF ACTION
### (Battery against Ohemeng)

123.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

124.    As alleged herein, Ohemeng repeatedly made physical contact with Plaintiff's body.

125.    Said contact was made intentionally and/or recklessly by Ohemeng.

126.    Said contact was made in a harmful or offensive manner.

127.    Said contact was knowingly made without Plaintiff's consent.

128.    Said contact caused physical harm, emotional distress, and mental trauma to

Plaintiff.

129.    As a direct and proximate result of said battery, Plaintiff suffered and continues to suffer actual damages in an amount to be determined at trial, plus punitive damages, interest, attorney's fees, and costs.

130.    As a direct and proximate result of said battery, Plaintiff has been damaged in an amount to be determined at trial, plus punitive damages, interest, attorney's fees, and costs.

## SIXTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress against Ohemeng)

131.    Plaintiff repeats each and every previous allegation as if fully set forth herein.

132.    As alleged herein, Ohemeng engaged in extreme and outrageous conduct towards Plaintiff.

133.    Said conduct was done with the intent to cause severe emotional distress, and/or reckless disregard as to whether such conduct would cause severe emotional distress, to Plaintiff.

134.    Said conduct proximately caused severe emotional distress, mental trauma, and physical harm to Plaintiff.

135.    As a direct and proximate result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, plus punitive damages, interest, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a.   Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b.   Designation of this action as a class action pursuant to Rule 23;

c.   Designation of Plaintiff as representative of the Class;

d.   On the First Cause of Action, judgment for the FLSA Collective Plaintiffs against

GCS and the Management Defendants, jointly and severally, for unpaid wages in an amount to be determined at trial, together with liquidated damages, interest, costs, and attorney's fees;

e.  On the Second Cause of Action, judgment for Plaintiff and the other Class members against GCS and the Management Defendants, jointly and severally, for unpaid wages in an amount to be determined at trial, together with liquidated damages, statutory penalties, interest, costs, and attorney's fees;

f.  On the Third and Fourth Causes of Action, judgment for Plaintiff against all Defendants, jointly and severally, for damages to be determined at trial, together with punitive damages, interest, costs, and attorney's fees; and

g.  On the Fifth and Sixth Causes of Action, judgment for Plaintiff against Ohemeng for damages to be determined at trial, together with punitive damages, interest, costs, and attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated:  February 5, 2020
        New York, New York

LEE LITIGATION GROUP, PLLC

By: _____*/s/ C.K. Lee*_____
    C.K. Lee
    Anne Seelig
    148 West 24th Street, 8th Floor
    New York, NY 10011
    (212) 465-1180
    *Attorneys for Plaintiff*