UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STEPHANIE THOMPSON, *on behalf of herself and all others similarly situated*,

                               Plaintiff,                      Case No. 20-CV-651(MKB)(SJB)

          - against -

GLOBAL CONTACT SERVICES, LLC, EUGENE
OHEMENG, FRANK CAMP, ANTOINETTE CURRIE,
and JAMIE HOFFMAN,

                            Defendants.
-------------------------------------------------------------------X

## THE GCS DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated: New York, New York
       December 7, 2020

Aaron Warshaw
Jessica Schild
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500

Attorneys for Defendants
*Global Contact Services, LLC, Frank Camp,
Antoinette Currie, and Jamie Hoffman*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     BACKGROUND ..................................................................................... 3

        A.      GCS's Time Entry Policies and Practices ................................... 3

        B.      Procedural History .................................................................... 6

III.    ARGUMENT ......................................................................................... 7

        A.      The Applicable Standards .......................................................... 7

                1.      Conditional Certification Standard ................................ 7

                2.      Summary Judgment Standard ....................................... 9

        B.      Thompson's Motion for Conditional Collective Certification
                Should be Denied .................................................................... 10

                1.      Thompson Has Not Established That She is Similarly Situated to the
                        Proposed Class .......................................................... 10

                        a.      Thompson's Class Definition Is Defective ................... 11

                        b.      Thompson's "Evidence" Does Not Demonstrate a Common
                                Policy in Violation of the FLSA .................................... 12

                        c.      Thompson's "Off the Clock" Claim Requires an
                                Individualized, Fact-Intensive Inquiry, Rendering the Claim
                                Inappropriate for Collective Action Treatment........................... 15

                2.      The Court Should Deny Thompson's Request for Equitable Tolling....... 16

                3.      Fairness and Procedural Considerations Make a
                        Collective Action Improper .................................................. 17

                4.      Notice Is Inappropriate Because Plaintiff Has Not Established
                        That Other Individuals Seek to Join This Litigation.................................. 18

        C.      The GCS Defendants' Cross-Motion for Partial Summary Judgment
                Should Be Granted .................................................................. 18

        D.      The GCS Defendants' Reservation of Rights ...................................... 21

        E.      CONCLUSION.............................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................10

*Ayers v. SGS Control Servs., Inc.*,
2004 WL 2978296 (S.D.N.Y. Dec. 21, 2004) ........................................................11

*Barfield v. New York City Health & Hosps. Corp.*,
2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005)...........................................................7

*Belpasso v. Port Authority of N.Y. & N.J.*,
400 F. App'x 600 (2d Cir. 2010) .............................................................................21

*Brown v. ScriptPro, LLC*,
700 F.3d 1222 (10th Cir. 2012) ...............................................................................20

*Brumbelow v. Quality Mills, Inc.*,
462 F.2d 1324 (5th Cir. 1972) .................................................................................16

*A.Q.C. ex rel. Castillo v. United States*,
656 F.3d 135 (2d Cir. 2011)......................................................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................10

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
261 F. Supp. 2d 188 (E.D.N.Y. 2003) ......................................................................9

*D'Anna v. M/A-COM, Inc.*,
903 F. Supp. 889 (D. Md. 1995) ...............................................................................8

*Darrikhuma v. Southland Corp.*,
975 F. Supp. 778 (D. Md. 1997), *aff'd*, 129 F.3d 1258 (4th Cir. 1997) .................16

*Desilva v. North Shore-Long Isl. Health Jewish Health Sys, Inc.*,
27 F. Supp. 3d 313 (E.D.N.Y. 2014) .......................................................................17

*Edwards v. City of New York*,
No. 08-CV-3134 (DLC), 2012 U.S. Dist. LEXIS 68055 (S.D.N.Y. May 15,
2012) .........................................................................................................................20

*Enriquez v. Cherry Hill Market Corp.*,
No. 10-CV-5616, 2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) ................................8

*Fairchild v. All Am. Check Cashing, Inc.*,
   815 F.3d 959 (5th Cir. 2016) ................................................19

*FDIC v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010)................................................10

*Flores v. Osaka Health Spa, Inc.*,
   2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) ....................11

*Fu v. Mee May Corp.*,
   2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016)..........................14

*Gomez v. Kitchenette 123 Inc.*,
   2017 WL 4326071 (S.D.N.Y. Sept. 5, 2017)..........................14

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)................................................10

*Grosswiler v. Freudenberg-NOK Sealing Techs.*,
   No. 3:14-CV-1551, 2015 U.S. Dist. LEXIS 109592 (N.D. Ohio Aug. 19,
   2015), *aff'd*, 642 F. App'x 596 (6th Cir. Mar. 2, 2016)..........................19

*Guo v. Tommy's Sushi Inc.*,
   2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) ..........................14

*Haynes v. Singer Co.*,
   696 F.2d 884 (11th Cir. 1983) ................................................18

*Hernandez v. Bare Burger Dio Inc.*,
   2013 WL 3199292 (S.D.N.Y. June 25, 2013) ..........................14

*Holzapfel v. Town of Newburgh*,
   145 F.3d 516 (2d Cir. 1998)................................................19

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990)................................................17

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014) ................................................16

*Khan v. Airport Mgmt. Servs.*,
   LLC, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011) ............8

*Ko Sheng Chuang v. T.W. Wang Inc.*,
   647 F. Supp. 2d 221 (E.D.N.Y. 2009) ................................................10

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F.3d 706 (2d Cir. 2001)................................................19

*Li v. Chinatown Take-Out Inc.*,
  2018 WL 1027161 (S.D.N.Y. Feb. 21, 2018)........................................................................14

*Lundy v. Catholic Health Sys. of Long Isl. Inc.*,
  711 F.3d 106 (2d Cir. 2013)................................................................................................1

*MacGregor v. Farmers Ins. Exchange*,
  2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) ........................................................9

*Mackenzie v. Kindred Hosps. E., L.L.C.*,
  276 F. Supp. 2d 1211 (M.D. Fla. 2003)..............................................................................18

*Manners v. State*,
  727 N.Y.S.2d 547, 548 (3d Dep't 2001).............................................................................16

*Mata v. Foodbridge LLC*,
  2015 WL 3457293 (E.D.N.Y. June 1, 2015) .....................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...........................................................................................................10

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007).................................................................................................9

*Mike v. Safeco Ins. Co. of Am.*,
  274 F. Supp. 2d 216 (D. Conn. 2003)..................................................................................8

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010).................................................................................................8

*Prizmic v. Armour, Inc.*,
  2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ...................................................11

*Reed v. Mobile County Sch. Sys.*,
  246 F. Supp. 2d 1227 (S.D. Ala. 2003)................................................................................8

*Reich v. N.Y. City Transit Auth.*,
  45 F.3d 646 (2d Cir. 1995).................................................................................................16

*Reyes Cruz v. 70-30 Austin St. Bakery Inc.*,
  2019 WL 1929910 (S.D.N.Y. May 1, 2019) .....................................................................14

*Rodas v. Town of Farmington*,
  567 F. App'x 24 (2d Cir. 2014) .........................................................................................21

*Ruiz v. Serco, Inc.*,
  2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011)....................................................9

iv

*Sanchez v. JMP Ventures, LLC,*
    2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ........................................................14

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998)................................................................................10

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..............................................................20

*Vasto v. Credico (USA) LLC*,
    2016 WL 2658172 (S.D.N.Y. May 5, 2016) ......................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................................9

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003).................................................................................17

**Statutes and Other Authorities**

29 U.S.C. § 207(a)(1) .............................................................................................19

29 U.S.C. § 255(a) ..................................................................................................12

29 U.S.C. § 256.................................................................................................16, 17

Fed. R. Civ. P. 23 .....................................................................................................9

Fed. R. Civ. P. 56(a) .................................................................................................9

## I.     **PRELIMINARY STATEMENT**

Defendants Global Contact Services, LLC ("GCS"), Frank Camp, Antoinette Currie, and Jamie Hoffman (collectively, the "GCS Defendants") submit this memorandum of law in opposition to the motion of Plaintiff Stephanie Thompson ("Thompson" or "Plaintiff") for conditional collective certification, filed October 30, 2020, (the "Motion"), and in support of the GCS Defendants' Motion for Partial Summary Judgment.

Thompson, a former customer care associate for GCS, seeks to certify this case as a nationwide collective action under the Fair Labor Standards Act ("FLSA") based on purported "off the clock" claims. In fact, Thompson's claims and her cursory support for conditional collective certification amount to "nothing but low-octane fuel for speculation" that the Second Circuit has repeatedly cautioned against in FLSA cases. *Lundy v. Catholic Health Sys. of Long Isl. Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). Rather than grant conditional certification, the evidence shows that Thompson's First Cause of Action under the FLSA claims should, in fact, be dismissed.[1] GCS operates an Access-a-Ride call center in Long Island City, New York (the "Call Center") pursuant to an agreement with the New York City Transit Authority ("NYCTA"). GCS's revenue from NYCTA is based on the number of hours worked by Call Center customer care associates, and GCS therefore has no incentive whatsoever for customer care associates to work "off the clock" because it would receive less revenue for the same services performed. As described below, GCS utilizes numerous steps to ensure that Thompson and other customer care

---

[1]      Thompson brought this action as a hybrid case alleging wage and hour violations (First and Second Causes of Action), discrimination (Third and Fourth Causes of Action), and battery and IIED against defendant Eugene Ohemeng ("Ohemeng") (Fifth and Sixth Causes of Action). On November 12, 2020, the GCS Defendants filed its fully briefed motion for partial judgment on the pleadings, demonstrating that the Court must dismiss Plaintiff's Second Cause of Action under the New York Labor Labor (the "NYLL") because her individual and purported class claims under the NYLL are barred by the final judgment and order entered in connection with a prior class action settlement. (Dkt. 32.) The Court has yet to rule on the motion. The GCS Defendants are similarly confident of obtaining summary judgment of Thompson's discrimination claims at the end of the discovery process. The GCS Defendants do not represent Ohemeng, who we understand has not been served with the Summons and Complaint.

associates at the Call Center accurately tracked their time, and that they were paid for all hours worked. Until she filed the foregoing action, Thompson never complained that she was required to work "off the clock" or was paid inaccurately for all time worked.

Despite this, Thompson now seeks to send notice to every current and former employee of GCS, regardless of which position they held or duties they performed; regardless of whether they were full-time or part-time; regardless of whether they ever worked overtime; regardless of who their supervisor was; regardless of which call center or facility they worked in; and regardless of what particular practices were followed in each location. As a threshold matter, Plaintiff's motion must be denied because Plaintiff has not clearly defined the class of employees whom she seeks to represent; has not identified any common policy, plan, or scheme in violation of the FLSA; and has not established that she is similarly situated to other customer care associates within GCS and within the numerous call-center locations. In fact, Thompson's Memorandum of Law (the "Moving Brief") devotes only a few paragraphs with no citations to the Complaint or her Declaration "arguing" that Plaintiff has shown that she is similarly situated to other GCS employees. (Moving Brief at 5-7.) There is simply no substance to Thompson's "similarly situated" argument, notwithstanding the higher burden she has created by electing to move on behalf of all non-exempt GCS employees across the nation. This alone is fatal to her Motion.

Even if Thompson could overcome this threshold burden, which she cannot do, she does not allege any specific facts, names, conversations, observations, documents, or other evidence to determine whether she is similarly situated to anyone or that they suffered a common policy in violation of the FLSA. Thompson instead relies upon her own self-serving, conclusory, and vague declaration. Yet, Thompson's declaration merely states that other employees experienced the same alleged employment practices, based on her statement that she "witnessed many other

2

employees at GCS complaining" and that "employees were working the same or similar hours" as her. (Decl. of Stephanie Thompson ("Thompson Decl."), ¶¶ 15-16). Thompson's declaration does not identify, paraphrase, or quote a single specific observation or conversation concerning alleged wage and hour violations. In other words, the motion contends that personal observations of other employees "complaining" standing alone – even assuming that such second-hand "complaints" are admissible evidence under the hearsay rule – should be sufficient to satisfy conditional certification. Such a contention blatantly violates this Court's gatekeeping function in awarding conditional certification. The Court should therefore deny Thompson's conditional certification Motion because her factual assertions fail to establish a common policy in violation of the FLSA, or establish that she is similarly situated to other employees.

Similarly, and for the reasons explained above and herein, the GCS Defendants are entitled to summary judgment on Plaintiff's "off the clock" claim because, as a matter of law, an employer does not suffer or permit work where, as here, the employer (i) establishes procedures for employees to record their time; (ii) asks employees to certify that the time they submit is accurate; and (iii) pays employees for the time reported and certified. Here, Thompson consistently failed to (i) record minutes allegedly worked in excess of her regular schedule or caused by a purported delay in the timekeeping system as overtime and/or (ii) request overtime compensation for such time, in contradiction to the audits regularly performed on GCS's multiple timekeeping systems. Despite these failures, Plaintiff now seek to hold the GCS Defendants liable for overtime she never reported as time worked. The GCS Defendants are entitled to summary judgment on Plaintiff's FLSA claims.

## II.   BACKGROUND

**A.   GCS's Time Entry Policies and Practices**

3

As noted above, GCS operates an Access-a-Ride Call Center in Long Island City pursuant to an agreement with NYCTA to provide such services. (Decl. of Frank Camp ("Camp Decl."), ¶ 1.) GCS provides the necessary staff to handle thousands of daily calls for Access-A-Ride paratransit services, including taking reservations, scheduling trips, handling schedule overrides, and adjusting computerized scheduling parameters. (*Id*.) GCS receives revenue from NYCTA based on the number of hours worked by Call Center customer care associates such as Thompson. (*Id.*, ¶ 3.) GCS therefore has no incentive whatsoever for its customer care associates[2] to work "off the clock" because, as a result, GCS would receive less revenue for the same services performed. (*Id*.)

GCS prohibits its Call Center customer care associates from working off the clock. (*Id.*, ¶ 4.) At the time of hire, Call Center customer care associates such as Thompson received training on this policy. (*Id*.) GCS takes numerous steps to ensure that its Call Center customer care associates track accurate hours and are paid for all hours worked. (*Id.*, ¶ 5.) All customer care associates at the Call Center such as Thompson recorded their hours worked utilizing an ADP time entry system. (*Id.*, ¶ 6.) The system requires customer care associates to log in and log out of their work computer using a unique username and password. (*Id.*) Customer care associates use terminal-based computer systems that are always running—i.e., that do not require boot up or boot down time. (*Id.*, ¶ 7.) Customer care associates are also required to log into an Avaya phone system using a numeric passcode. (*Id.*, ¶ 8.) Customer care associates must be logged into both the ADP and Avaya systems to perform their job duties. (*Id.*, ¶ 9.)

GCS pays customer care associates for all time worked when they are logged into the ADP and Avaya systems. (*Id.*, ¶ 10.) GCS's contract with NYCTA requires GCS to harmonize

---

[2]    While Thompson refers to her job title as "call center representative," her correct title was "customer care associate."

the ADP and Avaya time entry reports each month, and to perform reconciliations to correct any errors. (*Id.*) For example, if a customer care associate logged into the ADP system at 9:30 a.m., but was logged in to the Avaya system at 9:00 a.m., the associate would be paid starting at 9:00 a.m. (*Id.*) Customer care associates can also fill out a form to make manual corrections, such as when a customer care associate forgets to log in or log out of a system. (*Id.*, ¶ 11.) Supervisors are also trained to review customer care associates' time entry. (*Id.*, ¶ 12.) If supervisors see any discrepancies, or if a customer care associate informs a supervisor of any discrepancies, the supervisor will make corrections to ensure that the customer care associate is paid for their hours worked. (*Id.*) Customer care associates are encouraged to speak to their supervisor if they did not enter time correctly, or if they performed work outside of their normal working hours, so that a supervisor can ensure all time is appropriately entered. (*Id.*, ¶ 13.) Supervisors can, in turn, speak to GCS's Call Center management, such as Operations and Human Resources, if an issue arises over a customer care associate's time worked or time entry. (*Id.*, ¶ 14.) In addition, customer care associates at the Call Center are represented by TWU Local 100, and may grieve or otherwise raise complaints or concerns about workplace conditions through their union. (*Id.*, ¶ 15.)

Despite these numerous avenues to make corrections or changes to her time entry, or to raise issues relating to her time or payroll, Thompson never complained that she was required to work "off the clock," that she was not paid for time worked, or that she was not paid at an overtime rate for time worked over 40 in a week. (*Id.*, ¶ 16.) In addition, Thompson was never disciplined or threatened with discipline for recording hours she worked that were not part of my scheduled shifts, nor was she ever directed to "shave" or not enter time for hours worked. (*Id.*) Thompson never raised a formal grievance or informal complaint about her hours work or pay through her union. (*Id.*) In fact, the first time that GCS learned of Plaintiff Thompson's

allegations about allegedly working "off the clock" was when it received her Complaint after her employment terminated. (*Id.*)

Thompson's ADP time entry report shows that she generally worked a shift of approximately 10 hours starting before 7:00am and ending at 6pm, with a 30- to 60- minute lunch. (*Id.*, Ex. A.) In August 2019, prior to her separation from GCS, Thompson's time entry report shows that she worked an 8-hour shift starting at 8:00am and ending at 5pm. (*Id.*) In the end, GCS paid Thompson for all hours she worked as reflected on her time punch report from ADP after such entries were reconciled with the Avaya system. (*Id.*, ¶ 17.) To the extent that she complains about being "locked out" of the system, the report shows that—on *one* occasion—a manual note was entered that Thompson was "locked out of my computer had to change seats." (*Id.*, Ex. A, 4/19/19 entry). Notably, Thompson's time for this day reflects that she worked her customary ten-hour shift, refuting her claim that she was regularly docked or deducted time when her system was not working. In fact, Thompson's time entry report shows that she worked and was paid for her shift times throughout her employment at GCS. (*Id.*, Ex. A.)

## B.    Procedural History

On February 5, 2020, Thompson filed her Complaint on behalf of herself and other alleged similarly situated individuals. In pertinent part, Thompson's First Cause of Action asserts violations of the FLSA, claiming that she was not paid overtime or minimum wages. (Dkt. 1, ¶¶ 75-81.) Despite the fact that Thompson will not be able to withstand a dispositive motion in this case, and despite the FLSA's maximum three-year statute of limitations, Thompson now seeks conditional certification of a class consisting of every non-exempt employee of GCS employed

for the last six (6) years.[3] Thompson's Motion should be denied, and the GCS Defendants' cross

motion for summary judgment of Thompson's First Cause of Action should be granted.

## III.   ARGUMENT

Thompson has not established any unlawful policy, practice, or scheme common to each

putative class member, and instead only vaguely alleges that she and other unnamed customer

care associates were required or tolerated to work "off the clock" and did not receive overtime.

There is a fundamental—and fatal—flaw in Thompson's cursory argument: she lacks any

evidence or even plausible allegations she, in fact, worked "off the clock" and is owed overtime.

Even a cursory inquiry (let alone a fact-intensive one) shows that Thompson is *not* similarly

situated to any other GCS employee and there are no overreaching facts common to each

individual. As such, collective treatment is improper and notice should not issue, and summary

judgment should be granted to the GCS Defendants on Thompson's First Cause of Action.

### A.   The Applicable Standards

#### 1.   Conditional Certification Standard

It is axiomatic that a collective action may not be conditionally certified unless the named

plaintiff provides sufficient admissible evidence of a system-wide unlawful policy or practice to

violate the FLSA and establish the existence of "similarly-situated" individuals who wish to join

the action.  *Barfield v. New York City Health & Hosps. Corp.*, 2005 WL 3098730, at *1

(S.D.N.Y. Nov. 18, 2005)  ("[T]o warrant certification as a collective action under § 216(b) of

the FLSA, a plaintiff must make at least a modest factual showing sufficient to demonstrate that

[he or she] and potential plaintiffs together were victims of a common policy or plan that

violated the law.") (citations & quotations omitted); *Reed v. Mobile County Sch. Sys.*, 246 F.

---

[3]     For simplicity purposes, the GCS Defendants refer to Plaintiff's purported class as consisting of "customer care associates." However, and as explained in further detail below, she has not adequately defined the class of individuals she seeks to represent, and instead refers generally to all "non-exempt employees."

Supp. 2d 1227, 1232 (S.D. Ala. 2003) ("[T]he burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity."). Therefore, Thompson must demonstrate that "there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted).

"While plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs.*, LLC, 2011 U.S. Dist. LEXIS 133134, at *16 (S.D.N.Y. Nov. 16, 2011). Conditional certification under § 216(b) of FLSA requires that, prior to subjecting the GCS Defendants and this Court to the significant and costly burdens of a collective action, Thompson must make a factual showing that she is similarly situated and that questions common to a potential group of plaintiffs would predominate, which "cannot be satisfied simply by unsupported assertions." *Id.* (internal citations and quotations omitted); *see also Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying conditional certification "[b]ecause the proof in this case is specific to the individual [and plaintiff] ha[d] not provided evidence of a common thread binding his proposed class of employees").

The purpose of ensuring that a plaintiff has made some evidentiary showing of a similar policy, plan, or scheme is "to avoid the stirring up of litigation through unwarranted solicitation'" and to unnecessarily burden an employer "by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (quotations & citations omitted); *see also Enriquez v. Cherry Hill Market Corp.*, No. 10-CV-5616, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2012) (§ 216(b) notice

should not "devolve[] into a fishing expedition or impos[e] undue burdens on the defendants").[4]

Here, Plaintiff has failed to identify any unlawful policy, plan, or scheme common to Plaintiff

and to the putative class members and has not shown that this action can be effectively litigated

as a collective action. As such, her Motion must be denied.

### 2.     Summary Judgment Standard

A motion for summary judgment is appropriately granted when there is no genuine issue

as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56 (a). In addition, Rule 56 "authorizes partial summary judgment that falls short of a

final determination to limit the issues to be determined at trial." *In re Ciprofloxacin*

*Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 231 (E.D.N.Y. 2003). When considered for

the purposes of summary judgment, "[a] fact is 'material' when it might affect the outcome of

the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations omitted).

---

[4]     The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), is instructive on this point.  Although decided under Federal Rule of Civil Procedure 23, courts throughout the circuits have looked to this decision for "guidance in deciding when certification of a collection action under the FLSA is appropriate."  *Ruiz v. Serco, Inc.*, 2011 U.S. Dist. LEXIS 91215, at *18-19 (W.D. Wis. Aug. 5, 2011). In *Dukes*, the Court held  that "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551 (quotations omitted).  Thus, in *Ruiz*, the district court held that conditional certification was not appropriate where a determination of whether the plaintiffs were misclassified was not "susceptible to proof that can be extrapolated to the class plaintiffs seek to represent." *Ruiz*, 2011 U.S. Dist. LEXIS 91215, at *19; *see also MacGregor v. Farmers Ins. Exchange*, 2011 U.S. Dist. LEXIS 80361, at *15 (D.S.C. July 22, 2011) (conditional certification was "imprudent" where there were numerous individualized inquiries and a "[c]ollective action is unlikely to promote orderly and sensible case management").

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When that burden has been met, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In assessing the record to determine whether there is a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all possible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 242). However, the plaintiff must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thompson also "may not rely on conclusory allegations or unsubstantiated speculation." *Ko Sheng Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 225 (E.D.N.Y. 2009) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Applying this standard to the undisputed facts, partial summary judgment should be granted in favor of the GCS Defendants.

**B.      Thompson's Motion for Conditional Collective Certification Should Be Denied**

**1.      Thompson Has Not Established That She Is Similarly Situated to the Proposed Class**

It is Thompson's burden to demonstrate with competent evidence that she is "similarly situated" to other putative class members with respect to her "off the clock" and overtime claims. This she has not done, and simply *cannot* do. A cursory look at Plaintiff's papers establishes that she is *not* similarly situated to other customer care associates or any other GCS employee. By alleging that she is similarly situated to every other non-exempt GCS employee, Thompson attempts to nullify the FLSA's clear direction that only similarly situated individuals who

suffered a common policy or plan in violation of the FLSA can opt into the action. *Ayers v. SGS Control Servs., Inc.*, 2004 WL 2978296, at *4 (S.D.N.Y. Dec. 21, 2004) (plaintiffs must show "that they and potential plaintiffs together were victims of a common policy or plan that violated the law"). As demonstrated below, certification and notice should be denied.

### a.   Thompson's Class Definition Is Defective

Although Thompson claims to proceed on behalf of other "similarly-situated" employees, her Complaint and motion papers are void of meaningful allegations concerning employees other than herself. Indeed, Thompson's Complaint does not even bother to define the class she seeks to represent and throughout only refers to the purported class as "others similarly situated." (Dkt. 1.) In a failed effort to circumvent this, Thompson's class certification motion seeks certification of a vague class consisting of "all non-exempt employees employed by GCS" within the last six years. (Moving Brief at 5.) This overly broad definition in itself mandates denial of Plaintiff's motion because Plaintiff seeks certification of not only the customer care associates, but also *every* other non-exempt employee at GCS—regardless of whether they worked at the Call Center. Conditional certification is not proper because Thompson failed to define the proposed class adequately. *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, at *10 (E.D.N.Y. June 12, 2006) (denying conditional certification and holding that plaintiff had not clearly defined to whom he was similarly situated where plaintiff's complaint alleged the denial of overtime compensation on behalf of "only [plaintiff's] fellow installation installers" and plaintiff's conditional certification motion sought to "notify 'all current and former employees of Armour, Inc.' over the past three years who were not paid overtime"); *Flores v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 11378, at *7 (S.D.N.Y. Mar. 16, 2006) (denying conditional certification and holding that "where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a

11

collective action certification is warranted"). Moreover, even assuming that Thompson had pled or alleged sufficient facts to show a willful violation of the FLSA (which she did not do), she seeks to conditionally certify a class spanning six years when the FLSA's statute of limitations is three years. 29 U.S.C. § 255(a). These defects alone render collective action treatment improper.

> **b.      Thompson's "Evidence" Does Not Demonstrate a Common Policy in Violation of the FLSA**

Moreover, Thompson failed to demonstrate that the "practices" she claims forced her to work "off the clock" violated the FLSA, let alone were nationwide or even Call Center policies. Simply put, Thompson's "evidence" is insufficient, as a matter of law, to warrant conditional certification. She makes blanket allegations that "GCS also had several timekeeping and payroll policies that reduced the hours for which employees were aid, in violation of the NYLL and FLSA." (Thompson Decl., ¶ 8.) Yet, there is no specification or indication as to what these policies were, nor that any other GCS employee was subject to the same policies and practices.

Thompson proffers the following allegations about other employees, which are solely based on her personal observations and second-hand conversations:

- Purported time clock issues were "system-wide and affected all of the call center employees." (*Id.*, ¶ 15.)

- Certain employees were observed working the same or similar hours as Thompson. (*Id.*, ¶ 16.)

- Allegedly, "there are hundreds of other employees who work or worked at GCS who had their paid time reduced by Defendants because of these issues." (*Id.*, ¶ 17.)

There are no facts or specifics substantiating these conclusory statements; rather, mere personal observations and conversations deriving seemingly from the fact that if she "turned around in [her] seat," she could "see dozens of employees on the phones for Defendants throughout [her] work day." (*Id.* ¶ 5.)

Thompson's self-serving and conclusory allegations are belied by the evidence. For instance, Thompson's time entry reports do not show that she was "logged out" or "locked out" of the ADP system as she claims. (Camp Decl., Ex. A.) Rather, the entries show that Thompson generally worked a shift of approximately 10 hours, and 8 hours for a few weeks in August prior to her separation. (*Id.*) To the extent that she complains about being "locked out" of the system, the report shows that—on *one* occasion—a manual note was entered that Thompson was "locked out of my computer had to change seats." (*Id.*, Ex. A, 4/19/19 entry). Notably, Thompson's time for this day shows that she worked her customary ten-hour shift without any docking or reduction in hours—wholly refuting her claim that she was regularly docked or deducted time when unable to work. On the basis of these reports, Thompson was paid for all hours that she worked after they were reconciled with the Avaya system. Thompson's conclusory allegations to the contrary should be rejected.

Moreover, the evidence belies that GCS has any incentive to force Thompson or others to work "off the clock," let alone that it occurred. Under GCS's contract with NYCTA, GCS receives revenue from based on the number of hours worked by Call Center customer care associates such as Thompson. (*Id.*, ¶ 3.) GCS's contract with NYCTA also requires GCS to harmonize the ADP and Avaya time entry reports each month, and to perform reconciliations to correct any errors. (*Id.*, ¶ 10.) Further, the evidence shows that:

- GCS prohibits its Call Center customer care associates from working off the clock. (*Id.*, ¶ 4.)

- Call Center customer care associates use computers that are terminal-based systems that do not require boot up or boot down time. (*Id.*, ¶ 7.)

- Supervisors are trained to review customer care associates' time entry and, if supervisors see any discrepancies, or if a customer care associate informs a supervisor of any discrepancies, the supervisor will make corrections to ensure the customer care associate is paid for their hours worked—as occurred for Thompson on April 19, 2019. (*Id.*, ¶ 12.)

- Customer care associates are encouraged to speak to their supervisor if they did not enter time correctly, or if they performed work outside of their normal working hours, so that a supervisor can ensure all time is appropriately entered. (*Id.*, ¶ 13.) Supervisors can, in turn, speak to GCS's Call Center management, such as in Operations and Human Resources, if an issue arises over a customer care associate's time worked or time entry. (*Id.*, ¶ 14.) In addition, customer care associates at the Call Center are represented by TWU Local 100, and may grieve or otherwise raise complaints or concerns about workplace conditions through their union. (*Id.*, ¶ 15.)

Despite the numerous avenues to correct or change her time entry, or to raise issues relating to her time or payroll, Thompson never complained that she was required to work "off the clock," that she was not paid for time worked, or that she was not paid at an overtime rate for time worked over 40 in a week. (*Id.*, ¶ 16.) In addition, Thompson was never disciplined or threatened with discipline for recording hours she worked that were not part of my scheduled shifts, nor was she ever directed to "shave" or not enter time for hours worked. (*Id.*) Thompson also never raised a formal grievance or informal complaint about her hours work or pay through her union. (*Id.*) These indisputable facts belie any truth to Thompson's assertion that GCS withheld her pay due to "off the clock" work.

Courts in this Circuit routinely deny analogous motions for conditional certification where the only "substantive" allegations are unsubstantiated personal observations and conversations that cannot withstand basic scrutiny. *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, 2019 WL 1929910, at *6 (S.D.N.Y. May 1, 2019); *Li v. Chinatown Take-Out Inc.*, 2018 WL 1027161, at *4-5 (S.D.N.Y. Feb. 21, 2018); *Fu v. Mee May Corp.*, 2016 WL 1588132, at *3 (S.D.N.Y. Apr. 20, 2016); *Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014); *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *5 (E.D.N.Y. June 1, 2015); *Sanchez v. JMP Ventures, LLC*, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); *Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013); *accord Gomez v. Kitchenette 123 Inc.*, 2017 WL 4326071, at *4 (S.D.N.Y. Sept. 5, 2017) ("[W]hen a plaintiff submits only one affidavit, without

14

corroboration, the level of detail in that affidavit becomes particularly important in evaluating the sufficiency of the plaintiff's showing.").

Yet, that is exactly what Thompson seeks to do here. It is undisputed that GCS's policy expressly provides that non-exempt Call Center customer sales associates such as Thompson are paid for all time worked. Customer care associates, supervisors, and other managers are required to review their timesheets to ensure they are accurate, and GCS ensures that the ADP and Avaya time punches align. Plaintiff submits only one declaration—her own—where the allegations are unsupported and conclusory. As described above, there are absolutely no details to enable the court to determine the appropriate scope of the proposed class and notice process. Simply including one declaration with unsupported, conclusory allegations with respect to an alleged common policy will not suffice, and is insufficient to warrant the onerous conditional certification that Thompson seeks.

> **c.    Thompson's "Off the Clock" Claim Requires an Individualized, Fact-Intensive Inquiry, Rendering the Claim Inappropriate for Collective Action Treatment**

Further, Thompson's off the clock claims are too individualized to warrant collective action treatment. Given the lack of any company-wide policy to require or even tolerate off the clock work, Thompson's FLSA claim amounts to a highly particularized inquiry that is inappropriate for collective action treatment. Thompson and other non-exempt employees nationwide, or other customer care associates for that matter, cannot be similarly situated because, to adjudicate the merits, the Court would need to determine for each customer care associate for each day:

- whether the individual performed activities "off the clock" outside the premises of his or her work location;

- whether and to what extent any "off the clock" time was unpaid;

- whether the "off the clock" activities constituted "work" under the law;

- whether and to what extent time spent clocking in or out was the result of a system delay and the amount of time spent doing so;

- whether any "off the clock" work was *de minimis* and, therefore, not compensable, *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 652-53 (2d Cir. 1995);

- whether any such work was for the benefit of GCS, *Manners v. State*, 285, AdD.2d 858, 859, 727 N.Y.S.2d 547, 548 (3d Dep't 2001) (dismissing off the clock claim where the employee performed no "work" for the employer's benefit);

- whether the individual was directed by management to perform such work, *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (dismissing off the clock claim where the plaintiff was not directed by her supervisor to perform work off the clock, though she was directed to complete the duties);

- whether the individual reported to his/her supervisor or other GCS representative that he or she performed such "off the clock" work;

- whether GCS otherwise knew that the individual performed "off the clock" for which he or she was not paid, *see, e.g.*, *Darrikhuma v. Southland Corp.*, 975 F. Supp. 778, 783-84 (D. Md. 1997) (dismissing off the clock claim where plaintiff's supervisor did not know plaintiff performed off the clock work), *aff'd*, 129 F.3d 1258 (4th Cir. 1997);

- whether the individual actually earned overtime pay; and

- what the time records and payroll records of each employee show for each day concerning the time the individual worked and the time for which the individual was paid, including any time paid that can be used for purposes of offset.

The adjudication of Thompson's off the clock claims would require a myriad of individualized determinations, both with respect to the merits of each individual's claim and any potential damages. For this additional reason, the need for significant individualized determinations makes conditional certification wholly inappropriate.

### 2.    The Court Should Deny Thompson's Request for Equitable Tolling

Thompson's request for equitable tolling should be denied as moot. Even then, in an FLSA collective action, the limitations period continues to run for each prospective plaintiff until he or she files a written consent to join the lawsuit with the court. *Jackson v. Bloomberg, L.P.*,

16

298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing 29 U.S.C. § 256(b)). While equitable tolling permits a court to extend a statute of limitations, the Supreme Court has made plain that federal courts should grant such tolling "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). It is a "drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (affirming denial of equitable tolling); *Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (refusing to toll claims despite pendency of motion for conditional certification for seven months). To obtain equitable tolling, Thompson must show that "circumstances are so extraordinary that the doctrine should apply" and that the putative plaintiffs "acted with reasonable diligence." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (listing situations where equitable tolling is "generally considered appropriate," none of which apply here). Moreover, the Portal-to-Portal Act provides that a plaintiff has not commenced an action until he or she has files a written consent to join it. 29 U.S.C. § 256. No individuals have filed a written consent to join the action, and Thompson cannot establish the extraordinary circumstances necessary to justify equitable tolling here.

### 3.    Fairness and Procedural Considerations Make a Collective Action Improper

In granting a motion for conditional collective certification, the Court must satisfy itself that the litigation is manageable as a collective action. *Desilva v. North Shore-Long Isl. Health Jewish Health Sys, Inc.*, 27 F. Supp. 3d 313, 327 (E.D.N.Y. 2014) (denying conditional certification because potential cost savings did not override negative effects that certification is very likely to have on fairness and manageability of proceedings). Here, this case is not manageable as a collective action because, as demonstrated above, it would be virtually impossible for the Court to engage in individualized analysis required by moribund "off the clock" claims on a collective basis. Such individualized inquiries render Plaintiff's claims

unmanageable and inappropriate for collective adjudication. Most importantly, conditional certification would be a waste of time and resources because decertification is inevitable given the myriad of individualized inquires. Because decertification is inevitable, conditionally certifying this class would not only waste the parties and the Court's judicial resources, but would also circumvent Section 216(b)'s goal of efficient resolution of employees' claims.

### 4. Notice Is Inappropriate Because Plaintiff Has Not Established That Other Individuals Seek to Join This Litigation

In addition to requiring judicial efficiency to proceed with a collective action, Thompson has failed to demonstrate that there are a sufficient number of other individuals interested in joining the litigation. *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983) (affirming dismissal of collective action where the only evidence that others desired to opt in was based on "unsupported assertions . . . that additional plaintiffs would come from other stores"); *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (holding that "unsupported expectations that additional plaintiffs will subsequently come forward" are insufficient to justify notice). There are well over 1,000 customer case associates at the Call Center alone. Nevertheless, there is only *one* plaintiff in this litigation. It is inconceivable for Thompson to maintain that her allegations are a sufficient basis to support a class action, let alone a nationwide one, when no other individual has sought to join her.

### C. The GCS Defendants' Cross-Motion for Partial Summary Judgment Should Be Granted

For substantially the same reasons as above, the GCS Defendants are entitled to summary judgment with respect to Thompson's "off the clock" claim under the FLSA as a matter of law. It is undisputed that her allegedly uncompensated work time in this case was not reported to GCS through its multi-step timekeeping system, and Thompson cannot prove that the GCS Defendants maintained the requisite knowledge to establish liability.

The FLSA requires that employers compensate non-exempt employees with overtime pay for any hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1). However, in order to be liable for unpaid overtime, the employer must have actual knowledge or must reasonably believe that the work was performed and was not paid. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (employer liable only if it "knows or has reason to believe" that the employee is continuing to work and that work was "suffered or permitted by the employer"). Moreover, it is common sense that "[a]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *See Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998).

Here, Thompson's "off the clock" claim is premised on the idea that she can allegedly work outside of her scheduled shift without giving anyone at GCS notice that she was doing so, and still be compensated for that time. Thompson's attempt to establish a practice of an alleged "dock in pay" where she admittedly arrives late to work is similarly misguided. As noted above, Thompson's own time records belie her allegations, and she was given multiple avenues to raise discrepancies in her time entry—an avenue she apparently utilized at least once. "When an employer has an established policy for tracking overtime, an employer is not liable for nonpayment if the employee fails to follow the established process." *Grosswiler v. Freudenberg-NOK Sealing Techs.*, No. 3:14-CV-1551, 2015 U.S. Dist. LEXIS 109592, at *11 (N.D. Ohio Aug. 19, 2015), *aff'd*, 642 F. App'x 596 (6th Cir. Mar. 2, 2016). In fact, multiple circuit and district courts across the country have held that employees must comply with an employer's procedures for reporting time. These same courts have consistently denied recovery where an employee fails to identify time worked using a timekeeping system specifically established by the employer. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016) (affirming judgment for employer where employee failed to report her unauthorized overtime in

the employer's timekeeping system); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) (same); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment on the plaintiffs' off the clock claims where "it [wa]s undisputed that [the employer's] record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in [the employer's] records [we]re solely due to the plaintiffs' deliberate failure to accurately report the time they worked") (emphasis in original). District Judge Denise Cote's decision in *Edwards v. City of New York* is equally instructive. *Edwards v. City of New York*, No. 08-CV-3134 (DLC), 2012 U.S. Dist. LEXIS 68055, at *10-11 (S.D.N.Y. May 15, 2012). In granting summary judgment to the defendant, Judge Cote held:

> The plaintiffs have failed to produce any admissible evidence that the defendant had actual or constructive knowledge of uncompensated overtime work. The plaintiffs were familiar with and utilized the defendant's system for tracking and compensating overtime; indeed, every deposed plaintiff testified that he or she had submitted overtime slips and received overtime compensation. The majority of deposed plaintiffs each received thousands of dollars in overtime during the limitations period. Some plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked that did not exceed a certain arbitrary time threshold. That fact, however, is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work.

*Id.* at *10-11. As in *Edwards*, Thompson knew or reasonably should have known GCS's policies and practice for recording her time, making changes to time records if necessary, and requesting additional compensation, and yet she did not utilize any of these avenues to correct her purported "off the clock" work.

The following facts are not in dispute and cannot be in dispute:

- Call Center associates are paid based on their time records, which includes two timekeeping systems that track when the employee is logged onto the system.

- A Call Center associate must be logged in to both timekeeping systems in order to do their job. Time records from both systems are reviewed regularly, and any gaps between the two systems are corrected, consistent with GCS's contract with the NYCTA.

- If a Call Center associate worked hours other than their regular shifts, they must record those hours worked.

- If a Call Center associate believes they are not compensated for all hours worked, they know that they may submit forms manually correcting any discrepancies in their time sheets, or report those discrepancies directly to their supervisor or other GCS manager, which will be corrected.

Thus, the only unpaid overtime compensation at issue is that which Thompson apparently did not report, or that she has completely fabricated. Further, Thompson's declaration is virtually identical to the allegations set forth in the Complaint. She submits no evidence, other than her own testimony, to support her allegations. Indeed, Thompson "cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." *Belpasso v. Port Authority of N.Y. & N.J.*, 400 F. App'x 600, 601 (2d Cir. 2010); *Rodas v. Town of Farmington*, 567 F. App'x 24, 27 n.3 (2d Cir. 2014) (it is "plainly insufficient to defeat summary judgment" where plaintiff fails to offer evidence to substantiate allegations contained in complaint).

Plaintiff cannot defeat summary judgment by simply reiterating the allegations contained in the Complaint. Her failure to adduce any evidence – and discovery will not uncover any evidence either – to substantiate her allegations warrants dismissal of the First Cause of Action without further proceedings.

## D.     The GCS Defendants' Reservation of Rights

In the highly unlikely event that the Court grants Thompson's Motion and denies the GCS Defendants' cross motion for partial summary judgment, which the Court should not do, the GCS Defendants reserve their right to raise additional objections to Thompson's

proposed notice and request for the disclosure of personal email addresses and phone numbers. The GCS Defendants further reserve their right to raise that Thompson's claim for willful violation of the FLSA should be dismissed as a matter of law. Of course, such issues are rendered moot if the Court denies Thompson's motion and grants the GCS Defendants' cross claims, as this Court should do.

## E.    CONCLUSION

For all the reasons discussed herein, the Court should deny Plaintiff's Motion for Conditional Collective Certification, grant GCS Defendants' Motion for Partial Summary Judgment, and grant such other relief as the Court deems necessary, including the GCS Defendants' legal fees and costs.


Dated: New York, New York
　　　　December 7, 2020

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By    /s Aaron Warshaw
    Aaron Warshaw
    Jessica Schild
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500

Attorneys for Defendants
 *Global Contact Services, LLC, Frank Camp,
Antoinette Currie, and Jamie Hoffman*

45034454.3