UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE THOMPSON, *on behalf of herself and others similarly situated*,

        Plaintiff,

    *v.*

GLOBAL CONTACT SERVICES, LLC, EUGENE OHEMENG, FRANK CAMP, ANTOINETTE CURRIE, and JAMIE HOFFMAN,

        Defendants.

ORDER
20-CV-651-MKB-SJB

**BULSARA, United States Magistrate Judge:**

On February 16, 2021, Plaintiff Stephanie Thompson ("Thompson") filed a motion for conditional certification of a collective under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).[1] Thompson seeks conditional certification of a collective "of all workers employed by Defendants for the six-year period prior to the filing of the Complaint."[2] In the alternative, Thompson seeks certification of a collective of "current and former call center representatives."[3] For the reasons below, the motion is denied.[4]

---

[1] Notice of Pl.'s Mot. for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) dated Oct. 30, 2020 ("Mot."), Dkt. No. 51; Mem. of Law in Supp. of Mot. dated Oct. 30, 2020 ("Mem."), Dkt. No. 52.

[2] Proposed Order, attached as Ex. 1 to Mot., Dkt. No. 51, ¶ 1.

[3] Mem. of Law in Reply to Defs.' Opp'n to Mot. dated Jan. 19, 2021 ("Reply"), Dkt. No. 59, at 5.

[4] A Magistrate Judge may "hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). This includes a motion for conditional certification of a collective action, which "is only a 'preliminary determination[ ]' and [is] not dispositive.'" *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (alterations in original) (quoting *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265–66 (E.D.N.Y. 2005)) (collecting cases).

FACTUAL BACKGROUND

Thompson submits a single affidavit—her own—in support of the motion. (Decl. of Stephanie Thompson dated May 8, 2020 ("Thompson Decl."), Dkt. No. 54). The following facts are drawn from that affidavit and the pleadings in this case.

Pursuant to a contract with the City of New York, Defendant Global Contact Services, LLC ("GCS") operates a call center in Long Island City that supports "Access-A-Ride," a program that provides transportation for people with disabilities who are unable to use other public transit. (Class and Collective Action Compl. dated Feb. 5, 2020 ("Compl."), Dkt. No. 1, ¶¶ 6, 23; GCS Defs.' Answer and Defenses to Pl.'s Compl. dated Apr. 27, 2020 ("Answer"), Dkt. No. 18, ¶¶ 6, 23). Thompson was employed by GCS as a call center representative for part of 2019.[5] (Compl. ¶¶ 2, 24; Answer ¶¶ 2, 24). She typically worked from approximately 6:55 AM to 6 PM four days a week, from Friday to Monday. (Thompson Decl. ¶ 6).

Before each shift, Thompson was required to log on to two separate systems: an ADP system that tracked her time at work and another system that tracked her time on the phone. (*Id.* ¶ 9). Thompson contends that various issues with these two systems resulted in her not being paid for all hours she worked. For one, Thompson claims that any discrepancies between the two systems was resolved in favor of GCS, that is, that if ADP showed she worked nine hours and the phone system showed she worked six hours, she would be paid for six hours. (*Id.*). For another, she asserts that it "often

---

[5] Thompson calls herself a "call center representative," but Defendants claim she was actually a "customer care associate." (GCS Defs.' Mem. of Law in Opp'n to Pl.'s Mot for Conditional Collective Certification and in Supp. of Their Cross-Mot. for Partial Summ. J. dated Dec. 7, 2020, Dkt. No. 56, at 4 n.2). For the purposes of this order, the Court refers to Thompson and her colleagues as "call center representatives."

2

t[ook] several minutes every day" to log on to the systems at all, and that employees were not compensated for that time. (*Id.* ¶¶ 10–11). She claims these systems were "frequently defective" and employees were not compensated for any time lost from those defects. (*Id.* ¶ 13). Thompson also explains that employees were docked ten minutes of pay if they were not logged in within one minute of the beginning of a shift. (*Id.* ¶ 11). Finally, she states that employees were not paid for "required meetings, training, administrative tasks, bathroom breaks," disciplinary meetings, "or any other task" besides being on the phone. (*Id.* ¶ 12). Thompson estimates these myriad polices resulted in her not being paid for approximately one or two hours of work per week, and because she typically worked over 40 hours a week, she was thus deprived of one or two hours of overtime per week in violation of FLSA. (*See id.* ¶ 14).

Thompson generally states that all call center employee were subject to these policies. (*Id.* ¶¶ 11 ("The policy was suffered by all call center workers."), 12 ("All call center employees suffered from this policy."), 13 ("These defects caused log-in delays which resulted in additional unpaid time for all call center employees."), 15 ("These systems were system-wide and affected all of the call center employees, not just me.")). She specifies six coworkers that she understood to have similar complaints about GCS. (*Id.* ¶ 16). She knows the full names of two. Akita Williamson, who sat near Thompson and worked the same shift, complained at an unspecified time about not getting paid for all hours worked because she "had been logged out of the system." (*Id.* ¶ 16(a)). Lisa Cutler, who worked the same shift but in a different part of the building, "spoke often" with Thompson about how she "w[as] not being paid for all the work time [she] spent at GCS." (*Id.* ¶ 16(b)). She offers no additional information about either employee. (*See id.* ¶ 16(a)–(b)).

3

Thompson identifies four other employees with complaints about GCS, only by their first names. Malachi, who worked the same shift and sat next to her, complained to Thompson at an unspecified time "about not being paid for all [his] hours because [he] had been logged out of the system." (*Id.* ¶ 16(a)). Thompson overheard Shontelle and Dakota—who worked the same shift in a different part of the building—"complain about not being paid properly." (*Id.* ¶ 16(c)). And Ivy, who worked a different shift, also complained to Thompson "that her supervisors docked her for breaks she didn't take" and that she sometimes had to work so late that she was unable to get home on the train and would have to spend the night in the office. (*Id.* ¶ 16(d)). She offers no further information about any of the four. (*See id.* ¶ 16).

## DISCUSSION

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute requires employers to pay employees a minimum hourly wage, *id.* § 206, and, for time worked in excess of 40 hours in a given workweek, an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed," *id.* § 207. Section 216(b) of FLSA provides a private right of action to employees to recover unpaid minimum wages or overtime compensation from an employer who violates the Act's provisions. The same section permits plaintiffs to have their cases certified as a collective actions on behalf of "themselves and other employees similarly situated." *Id.* § 216(b). Unlike Rule 23 class actions, a collective action is "opt in," meaning to join the suit a person must "give[ ] his consent in writing to become such a party" and file that consent "in the court in which such action is brought." *Id.*

4

Courts engage in a two-stage inquiry to determine whether to grant a motion to certify a FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while . . . not required by the terms of FLSA or the Supreme Court cases, we think is sensible." (footnote omitted)); *see, e.g.*, *Summa*, 715 F. Supp. 2d at 384; *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs *do in fact exist*." *Id.* (second emphasis added)).

At this first step of this process, Thompson's burden is minimal, but she must still make a "modest factual showing" that she and fellow employees were "victims of a common policy or plan that violated the law." *Id.* (quoting *Sbarro, Inc.*, 982 F. Supp. at 261). Key to this showing is whether plaintiffs "provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *accord Myers*, 624 F.3d at 555. "This first stage determination is 'based on the pleadings, affidavits and declarations[.]" *Bifulco*, 262 F.R.D. at 212 (alteration in original) (quoting *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26,

5

2006)); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members."). At the conditional certification stage, "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013). However, the inquiry "cannot be satisfied simply by 'unsupported assertions[.]'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

For example, courts in this Circuit have conditionally certified FLSA collectives based only on a plaintiff's detailed affidavit about her working conditions and those of her colleagues. *Miranda v. Gen. Auto Body Works, Inc.*, No. 17-CV-4116, 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017) ("[T]here are numerous examples of courts in this Circuit granting conditional certification based on the pleadings and a single affidavit by the plaintiff."); *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (same) (collecting cases); *see also Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332, 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) (certifying collective based on plaintiff's two affidavits that "adequately described conversations with other employees of JR Sushi concerning their wages"), *aff'd*, 2021 WL 465359 (Feb. 9, 2021).

In contrast, courts have denied conditional certification where a plaintiff makes only conclusory allegations about her workplace and fails to present any specific evidence of a common policy of wage-and-hour violations. *See, e.g.*, *Jian Guo Yang v. Zhou's Yummy Rest., Inc.*, No. 19-CV-5203, 2020 WL 2738403, at *3 (E.D.N.Y. Apr. 28, 2020) ("Yang's single affidavit is filled with conclusory allegations that generally state

6

he became familiar with a number of employees and their monthly salaries by 'chatting' with them. Despite 'chatting' with these employees, and working with them for years, he does not know the first names of six of the nine employees he spoke with; for one he provides only the title of his position. No information is provided as to when or where these conversations took place during Yang's many years of employment. Because 'the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed [collective] . . . and notice process,' certification is not possible." (alterations in original) (citations omitted) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at \*2 (S.D.N.Y. Jan. 27, 2014))); *Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785, 2018 WL 1135566, at \*4 (S.D.N.Y. Mar. 1, 2018) (denying certification where plaintiff "merely asserts in generalized terms that he observed other employees at work and had several conversations with other employees about their compensation"); *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at \*10 (S.D.N.Y. June 1, 2015) ("[W]hile his declaration lists the names and titles of seventeen coworkers—including food preparers, pizza men, counter persons, a cook, a grill man, a juice preparer, a porter, a delivery person, a dishwasher, and a panini preparer—who he ostensibly observed doing work the same or similar to his own . . . , he includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." (citation omitted)).

     Thompson has not made the modest factual showing necessary to demonstrate she and any other employees were victims of a common policy or plan that violated FLSA. Her conclusory assertions that "all" employees were subject to the same policies, (*e.g.*, Thompson Decl. ¶¶ 11–13, 15, 17), are insufficient to meet her burden, *see, e.g.*,

7

*Monzano-Moreno v. Libqual Fence Co.*, No. 18-CV-161, 2019 WL 1333264, at *5 (E.D.N.Y. Mar. 25, 2019) (denying collective certification where "Plaintiffs' only mention of other employees in the Amended Complaint . . . refer to other employees only in an abstract and conclusory fashion" and in the absence of "any particularized facts to fill in the bare-bones assertions that a potential collective exists"); *Fernandez v. On Time Ready Mix, Inc.*, No. 14-CV-4306, 2014 WL 5252170, at *2 (E.D.N.Y. Oct. 4, 2014) ("But minimal as the test is, it is more than that. Plaintiff's conclusory reference to conversations with other unnamed drivers about defendant's allegedly illegal practices, without more, does not allege that even one other driver employed by defendant was actually subject to the same allegedly illegal practices."); *Qing Gu*, 2014 WL 1515877, at *4.[6]

Thompson's specific averments about her six coworkers are also insufficient. Of the six coworkers Thompson mentions in her affidavit, only two express any of the concerns Thompson articulates in her Complaint. Thompson remembers Akita Wilkinson and Malachi "complaining" they were "not being paid all of their hours because they had been logged out of the system." (Thompson Decl. ¶ 16(a)). It not obvious that these conversations were with Thompson or whether the conversations were merely overheard by her. But no other details are provided either about when the

---

[6] Thompson does not, for example, offer "firsthand observations" of wage-and-hour violations that could sustain her motion. In *Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639, 646 (S.D.N.Y. 2013), which Thompson cites, (Reply at 4), the Court certified a collective where the plaintiff personally observed certain violations of wage-and-hour laws; for example, he saw that all employees were provided the same, insufficient wage notice and were sent home without pay if the restaurant was not busy. Thompson's accounts are largely based upon "overhearing" various conversations and having off-hand and occasional conversations about a variety of different practices with a limited set of employees.

8

conversations took place, the nature of the problem being referred to, including the timing and duration of the computer issues, when the violations took place, whether it affected only the employee's overtime compensation (like Thompson) or minimum wages or both, or whether the problem was temporary or long-standing. (And because the statements are devoid of detail, the conclusory assertions that "all" employees were subject to the same policies as Thompson do not fill these gaps.) In the absence of such detail, these statements are insufficient to warrant collective certification. *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016) ("When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved."); *Mata*, 2015 WL 3457293, at *4 (noting that details as to observations and conversations with other employees "are particularly important where a conditional certification motion is based on the lone affidavit of a *single* employee, who performed a single job function" (emphasis added)); *Reyes Cruz v. 70-30 Austin St. Bakery Inc.*, No. 18-CV-7408, 2019 WL 1929910, at *6 (S.D.N.Y. May 1, 2019) (denying collective certification where motion was based on a single affidavit that stated generally that plaintiff spoke with other employees but "d[id] not describe where or when these discussions took place, what the other employees were paid, what specific hours they worked or any other underlying details and offer[ed] only the conclusory assertion that the other employees were not paid overtime"); *Joshi*, 2018 WL 1135566, at *4 (rejecting collective certification where plaintiff's affidavit "only vaguely describe[d] conversations with other wait staff about their 'work and pay' and

9

[he] conclude[d] based on his 'experience' and these 'conversations' that other employees were not paid an overtime premium").

Nor do Thompson's statements concerning her four other coworkers provide any support for her motion. With respect to Lisa Cutler, Thompson only stated that Cutler "w[as] not being paid for all the work time [she] spent at GCS." (Thompson Decl. ¶ 16(b)). But despite having "several conversations" with her, (*id.*), Thompson does not say that Cutler complained about the problems Thompson bases her suit on (such as time being deducted for meetings with supervisors or for discrepancies in time records being read in favor of the employer rather than the employee)—or about different issues entirely. With respect to Shontelle and Dakota, Thompson states that she overheard them say they were not being "paid properly," (*id.* ¶ 16(c)), but Thompson does not say that either complained about their hours not being recorded properly or having problems with GCS's timekeeping systems, or anything else which would indicate to the Court that they were subject to the common policy Thompson describes as opposed to some other problem affecting their compensation. And Ivy's complaint is unrelated: she told Thompson that she was docked pay for breaks she did not take and was forced to stay overnight at the office. (*Id.* ¶ 16(d)). Thompson herself does not make such a claim. In other words, the allegations about these four coworkers offer no factual support for Thompson's assertions that all GCS employees are subject to the same conditions she complains about such that collective certification is warranted. *See, e.g.*, *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2018 WL 1027161, at *4 (S.D.N.Y. Feb. 21, 2018) (finding collective certification not warranted where plaintiff stated his supervisor fielded complaints about pay from other employees because "the existence of complaints from 'other employees' regarding pay does not suggest that all of

10

Defendants' non-managerial employees" were subject to a common policy or plan that violated FLSA). The impact of this deficiency is more pronounced in the present situation where Thompson is seeking certification of a collective of potentially thousands of employees who worked for Defendants. A sole affidavit based on vague conversations that do not detail specific violations or illegal practices is rarely, if ever, going to be sufficient to justify certification of such a collective; but in any case, here it is patently insufficient.

Thompson's authorities, (Mem. at 8–10; Reply at 5–6), are not to the contrary. In many of the cases she cites, the plaintiffs made a factual showing in support of collective certification through deposition testimony, documentary evidence, and multiple affidavits rather than a single declaration. *E.g.*, *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007)[7] (nine declarations); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 662–63 (S.D.N.Y. 2009) (documentary evidence and deposition testimony); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 160 (N.D.N.Y. 2008) (ten affidavits); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403–04 (S.D.N.Y. 2012) (declarations by or deposition testimony of ten people); *Flood v. Carlson Rests., Inc.*, No. 14-CV-2740, 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015) (six declarations); *Summa*, 715 F. Supp. 2d at 386 & n.6 (multiple affidavits); *Shi Yong Li v. 6688 Corp.*, No. 12-CV-6401, 2013 WL 5420319, at *2 (S.D.N.Y. Sept. 27, 2013) (two declarations); *Sipas v. Sammy's Fishbox, Inc.*, No. 05-CV-10319, 2006 WL 1084556, at *2 n.2 (S.D.N.Y. Apr. 24, 2006) (three affidavits); *Jason v. Falcon Data*

---

[7] The Court also observes that Thompson characterized *Fasanelli* as being from "this Court," (Reply at 2), although the case is from the Southern District of New York.

*Com, Inc.*, No. 09-CV-3990, 2011 WL 2837488, at *1 (E.D.N.Y. July 18, 2011) (three depositions and documentary evidence); *Lixin Zhao v. Benihana, Inc.*, 01-CV-1297, 2001 U.S. Dist. LEXIS 10678, at *8–10 (S.D.N.Y. July 5, 2001) (documentary evidence).[8] Such evidence stands in stark contrast to what is presented here: a single affidavit.

The remaining cases are inapposite. For example, in *Harhash v. Infinity West Shoes, Inc.*, No. 10-CV-8285, 2011 WL 4001072, at *1 (S.D.N.Y. Aug. 25, 2011), collective certification was unopposed. In *Khalil v. Original Homestead Restaurant, Inc.*, No. 07-CV-695, 2007 WL 7142139, at *1 & n.1 (S.D.N.Y. Aug. 9, 2007), the District Court concluded that the plaintiff demonstrated the employer was retaliating against employees who participated in the litigation; as a result, the Court excused the lack of supporting details and affidavits from other putative collective members. And in *Iriarte v. Redwood Dali & Catering, Inc.*, No. 07-CV-5062, 2008 WL 2622929, at *2–3 (E.D.N.Y. June 30, 2008), the employer gave sworn testimony that it kept no records for its employees, and the Court similarly excused the dearth of documentary evidence besides the plaintiff's affidavit in support of collective certification. And lastly, in *Angalada v. Linens 'N Things, Inc.*, contrary to Thompson's assertion, the Court declined to certify a nationwide collective for lack of evidence. No. 06-CV-12901, 2007 WL 1552511, at *5 (S.D.N.Y. Apr. 26, 2007), *report and recommendation adopted*, 2007 U.S. Dist. LEXIS 38918 (May 22, 2007).

---

[8] Thompson incorrectly cites *Jason* and *Lixin Zhao* as cases where a collective was conditionally certified based upon the complaint and a single affidavit. (*See* Mem. at 6).

12

In her reply, Thompson proposes that, if the Court does not certify a collective of all GCS employees, it instead certify a purportedly narrower collective of all "current and former call center representatives." (Reply at 5). This does not save her application. As set forth above, she does not offer evidence that there was *any* common policy or plan promulgated by GCS, much less that it applied to one type of employee or another.

For these reasons, the motion to conditionally certify a FLSA collective is denied.

SO ORDERED.

*/s/ Sanket J. Bulsara* July 21, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

13