UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE THOMPSON, *on behalf of herself and others similarly situated*,

        Plaintiff,

    *v.*

GLOBAL CONTACT SERVICES, LLC, EUGENE OHEMENG, FRANK CAMP, ANTOINETTE CURRIE, and JAMIE HOFFMAN,

        Defendants.

**REPORT & RECOMMENDATION**
20-CV-651-MKB-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiff Stephanie Thompson ("Thompson") commenced this action on February 5, 2020 against Global Contact Services, LLC ("GCS"), Frank Camp ("Camp"), Antoinette Currie, and Jamie Hoffman (together, "Defendants"), as well as Eugene Ohemeng ("Ohemeng").[1] Thompson was employed by GCS as a call center representative[2] for part of 2019.[3] In her Complaint, she asserts two distinct sets of claims. The first set relates to Defendant Ohemeng, her former coworker at GCS; Thompson alleges Ohemeng sexually assaulted her multiple times and continually sexually harassed her at work, and, after she complained multiple times to GCS management, rather than helping her or taking action against Ohemeng, GCS

---

[1] Class and Collective Action Compl. dated Feb. 5, 2020 ("Compl."), Dkt. No. 1. Ohemeng has not appeared in the case.

[2] Thompson calls herself a "call center representative," but Defendants claim she was actually a "customer care associate." (GCS Defs.' Mem. of Law in Opp'n to Pl.'s Mot for Conditional Collective Certification and in Supp. of Their Cross-Mot. for Partial Summ. J. dated Dec. 7, 2020 ("Mem."), Dkt. No. 56, at 4 n.2). For the purposes of this Report and Recommendation, the Court refers to Thompson as a "call center representative."

[3] Compl. ¶¶ 2, 24; GCS Defs.' Answer and Defenses to Pl.'s Compl. dated Apr. 27, 2020 ("Answer"), Dkt. No. 18, ¶¶ 2, 24.

constructively terminated her.[4] Thompson asserts claims under the New York State Human Rights Law and New York City Human Rights Law against all Defendants and battery and intentional infliction of emotional distress against Ohemeng alone.[5]

The second set is wage-and-hour claims. Thompson alleges that GCS had a practice of shaving call center employee time in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").[6] On behalf of herself and a putative FLSA collective, she seeks recoupment of unpaid straight time and overtime wages under FLSA, and on behalf of herself and a putative NYLL class, payment of straight time and overtime wages and spread-of-hours compensation.[7]

Thompson moved for conditional certification of a FLSA collective.[8] In response, Defendants cross-moved for partial summary judgment, seeking dismissal of Thompson's individual FLSA claim.[9] The motion for conditional certification is denied

---

[4] Compl. ¶¶ 4, 41–63.

[5] *Id.* ¶¶ 90–135.

[6] *Id.* ¶¶ 23–40. Defendants have separately moved to dismiss the NYLL claims under Rule 12(c) of the Federal Rules of Civil Procedure, contending that the claims are barred by virtue of the class action settlement in *Finisterre v. Global Contact Services, LLC*, No. 521437/2019 (N.Y. Sup. Ct. filed Oct. 17, 2019). (GCS Defs.' Notice of Mot. for J. on the Pleadings dated Oct. 15, 2015 [sic], Dkt. No. 32; GCS Defs.' Mem. of Law in Supp. of Their Mot. for J. on the Pleadings dated Oct. 15, 2020, Dkt. No. 33, at 1).

[7] Compl. ¶¶ 76–89.

[8] Notice of Pl.'s Mot. for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) dated Oct. 30, 2020 ("Pl.'s Mot."), Dkt. No. 51.

[9] GCS Defs.' Notice of Mot. for Partial Summ. J. dated Dec. 7, 2020 ("Cross-Mot."), Dkt. No. 55.

2

in a separate opinion issued contemporaneously herewith. For the reasons outlined below, the Court respectfully recommends the cross-motion be denied.

## SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* r. 56(c)(1)(A). Alternatively, it may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* r. 56(c)(1)(B).

In moving for summary judgment or answering such a motion, litigants in this District are required by the Local Rules to provide a statement setting forth purported

3

undisputed facts or, if controverting any fact, responding to each assertion. *See* Local Civil Rule 56.1.[10]  In both instances, the party must support its position by citing to admissible evidence from the record. Local Civil Rule 56.1(d); *accord* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). Nor may a court accept a conclusory denial in a Rule 56.1 counterstatement if the denial is not supported by admissible evidence. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354–55 (E.D.N.Y. 2015) (granting summary judgment where nonmoving party "relie[d] solely on his own general statements" rather than admissible evidence in disputing moving party's statement of material facts); *accord Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27 (2d Cir. 2003). Further, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement "by the moving party will be deemed to be admitted." Local Civil Rule 56.1(c); *see, e.g.*, *Vasquez v. Victor's Cafe 52d Street, Inc.*, No. 18-CV-10844, 2019 WL 4688698, at *2–3 (S.D.N.Y. Sept. 26, 2019)

---

[10] "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

4

(deeming all facts in defendants' Rule 56.1 statement admitted where plaintiff failed to controvert any with admissible evidence). For example, if a party responds to a numbered paragraph by stating that she lacks sufficient information to admit or controvert a particular fact, the fact is deemed admitted. *See, e.g.*, *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014) ("In some cases Plaintiffs refuse to admit or deny a particular statement, submitting only that they 'lack knowledge or information sufficient to form a belief as to' the statement in question. This is not a permissible basis on which to rebut a fact submitted as undisputed by a moving party." (citation omitted)); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 495 n.2 (S.D.N.Y. 2015) (same).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of those claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). "In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses." *Id.* (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)). The Court also does not consider hearsay, speculation, or other inadmissible evidence in evaluating declarations or affidavits. *See Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must . . . set out facts that would be admissible in evidence[.]").

"Rule 56(d) protects a party opposing a summary judgment motion who for valid reasons cannot . . . present facts essential to justify the adverse party's opposition to the

5

motion." 10B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2740 (4th ed. 2021).  The Rule provides, if the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  This affidavit or declaration "must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).  The showing *must* be made by affidavit or declaration, and a lack thereof warrants denial of any request made under this Rule.  *See, e.g.*, *1077 Madison St., LLC v. Daniels*, 954 F.3d 460, 464 (2d Cir. 2020) (per curiam); *Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012) ("Hoffmann's attorney's Rule 56(d) affidavit lacked any particularity as to how the facts sought would create an issue of material fact and made no attempt to explain the efforts Hoffmann made to obtain those facts during the time provided for discovery.  Indeed, there is no indication in the record that Hoffmann made any effort to request documents from Airquip or schedule depositions of Airquip employees.  Accordingly, given Hoffmann's failure to conduct any discovery in the time provided, we find no abuse of discretion in the district court's denial of his motion for further discovery.").

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the pleadings, the parties' Rule 56.1 statements, and supporting affidavits.[11]

Pursuant to a contract with the New York City Transportation Authority, GCS operates a call center in Long Island City that supports "Access-A-Ride," a program that provides transportation for people with disabilities who are unable to use other public transit. (Defs.' 56.1 Statement ¶ 1; Pl.'s 56.1 Statement ¶ 1; Compl. ¶ 23; Answer ¶ 23). Thompson was employed by GCS as a call center representative for part of 2019. (Compl. ¶¶ 2, 24; Answer ¶¶ 2, 24). She typically worked from 6:55 AM to 6 PM four days a week, from Friday to Monday. (Thompson I Decl. ¶ 6; *accord* Timecard).

Thompson estimates that she was not compensated for approximately one or two hours a week of overtime she worked—time she was unable to record under GCS's timekeeping systems. (Thompson I Decl. ¶ 14).

GCS asserts that it "takes numerous steps to ensure that its Call Center customer care associates track accurate hours and are paid for all hours worked," (Defs.' 56.1 Statement ¶ 6), and that it "prohibits" these employees "from working off the clock," (*id.*

---

[11] Defendants provide a Rule 56.1 statement, (GCS Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 dated Dec. 7, 2020 ("Defs.' 56.1 Statement"), Dkt. No. 57), supported solely by the declaration of Defendant Frank Camp, (Decl. of Frank Camp dated Dec. 7, 2020 ("Camp Decl."), Dkt. No. 58). His declaration attaches one piece of evidence, Thompson's time records. (Timecard Detail Report ("Timecard"), attached as Ex. A to Camp Decl., Dkt. No. 58). Thompson provides a Rule 56.1 statement, (Pl.'s Resp. to Defs.' Rule 56.1 Statement of Material Facts dated Feb. 2, 2021 ("Pl.'s 56.1 Statement"), Dkt. No. 61), supported by two of her own declarations, (Decl. of Stephanie Thompson dated May 8, 2020 ("Thompson I Decl."), Dkt. No. 54; Decl. of Stephanie Thompson dated Feb. 1, 2021 ("Thompson II Decl."), Dkt. No. 62).

¶ 4). In contrast, Thompson claims GCS "[m]anagement was aware that employees worked off the clock" and occasionally asked her to do so. (Thompson II Decl. ¶¶ 2, 5).

There are two systems GCS uses to track employee time: an ADP computer system and an Avaya phone system. (Defs.' 56.1 Statement ¶¶ 7, 10).[12] An employee must be logged on to both to perform her job. (Defs.' 56.1 Statement ¶ 11; Pl.'s 56.1 Statement ¶ 11). Thompson asserts both systems were plagued with technical defects, (Compl. ¶ 32; Thompson I Decl. ¶¶ 12–13), which resulted in unrecorded additional work, an assertion that Defendants do not address.

Employees log on to the ADP computer system using a unique username and password. (Defs.' 56.1 Statement ¶ 8; Pl.'s 56.1 Statement ¶ 8). The computers "are terminal-based systems that are always running—*i.e.*, that do not require boot up or boot down time." (Defs.' 56.1 Statement ¶ 9).[13] Employees log on to the Avaya phone system using a numeric passcode. (Defs.' 56.1 Statement ¶ 10; Pl.'s 56.1 Statement ¶ 10). Thompson contends that it took several minutes to log on to both systems at the beginning of her shift and that she was not compensated for these delays. (Compl. ¶ 29; Thompson I Decl. ¶ 10). Defendants again do not address these facts in their motion.

---

[12] Thompson admits that employees were required to use the Avaya system. (Pl.'s 56.1 Statement ¶ 10). The Court deems GCS's requirement for employees to use the ADP computer system admitted, as Thompson's denial is not supported by admissible evidence—that is, the paragraph of her declaration cited in opposition does not refute Defendants' claim. (*See* Pl.'s 56.1 Statement ¶ 7 (citing Thompson II Decl. ¶ 2)).

[13] The Court deems this fact admitted; while Thompson disputes it, she does not cite to any evidence (that is, her declaration does not provide any) that the ADP computers require a boot-up or boot-down time; only that it takes time to log on to the system. (Pl.'s 56.1 Statement ¶ 9 (citing Thompson II Decl. ¶ 2)).

8

GCS "harmonize[s]" the time entries from ADP and Avaya each month. (Defs.' 56.1 Statement ¶ 13).[14] But Thompson contends that all inconsistencies are resolved against the employee and in favor of GCS. (Compl. ¶ 28; Thompson I Decl. ¶ 9). GCS alleges the opposite, that all inconsistencies are resolved in favor of the employee. (Camp Decl. ¶ 10). Defendants provide Thompson's time records in support of their motion, but these documents only reflect Thompson's recorded hours *after* the two systems were reconciled and do not clarify the issue in dispute. (*Id.* ¶ 17 ("Thompson was paid for all hours worked as reflected on her time punch report after such entries were reconciled with the Avaya system.")).

GCS describes multiple avenues for employees to make corrections to their time entries. Employees may fill out a form to make manual corrections. (Defs.' 56.1 Statement ¶ 14). Employees are encouraged to speak to their supervisors, who are trained to review time entries, to ensure time is entered correctly. (*Id.* ¶¶ 15, 17). Those supervisors may resolve time-entry issues with GCS management. (*Id.* ¶ 18). Employees may also raise grievances with their union. (*Id.* ¶ 19). GCS states it possesses "no record that" Thompson ever complained about off-the-clock work and that she "never raised a formal grievance or informal complaint about her hours work[ed] or pay through her union." (Camp Decl. ¶¶ 14, 16).

Thompson agrees that, in theory, these avenues exist. For example, she agrees employees could fill out a form to make corrections to their time entries. (Thompson II Decl. ¶ 3). She contends, however, these avenues were futile because supervisors were

---

[14] The Court deems this fact admitted; in response, Thompson stated she possessed "[i]nsufficient information to admit or deny" it, (Pl.'s 56.1 Statement ¶ 13), which constitutes an admission, *Whitehurst*, 998 F. Supp. 2d at 248.

9

not trained appropriately and failed to make corrections to time entries in response to complaints by employees, (*id.* ¶¶ 2–4), and her union failed to take any action in response to her complaints, (*id.* ¶ 6). She disputes that she never complained to GCS or her union about her pay or hours. (Pl.'s 56.1 Statement ¶¶ 20, 22).

Thompson commenced this action on February 5, 2020 by filing the Complaint. (Compl.). Defendants answered the Complaint on April 27, 2020. (Answer). On October 29, 2020, Thompson and Defendants jointly proposed a briefing schedule for Thompson's motion for conditional certification of a FLSA collective and Defendants' cross-motion for partial summary judgment on Thompson's FLSA claim. (Letter dated Oct. 29, 2020, Dkt. No. 29). The proposed schedule was so ordered, and the Court directed the parties to file the fully briefed motions on the docket by January 15, 2021. (Order dated Oct. 29, 2020). The parties requested, (Letter Mot. dated Jan. 4, 2021, Dkt. No. 43), and the Court granted, an extension of time for the parties to brief their motions and directed the parties to file the fully briefed motions by January 29, 2021, (Order dated Jan. 5, 2021).

On January 14, 2021, Thompson moved to bifurcate the briefing on her motion for conditional collective certification and Defendants' cross-motion for summary judgment and to deny Defendants' cross-motion as premature in the absence of any discovery. (Letter Mot. dated Jan. 14, 2021, Dkt. No. 44). Both requests were denied; the Court observed that Thompson proposed the briefing schedule with Defendants and found her request to deny the motion for partial summary judgment as premature was deficient under Rule 56(d). (Order dated Jan. 19, 2021).

No motions were filed on January 29, 2021, and on February 16, 2021, the Court ordered the parties to show cause why the collective action allegations and Defendants'

right to move for summary judgment should not be deemed waived. (Order to Show Cause dated Feb. 16, 2021). The parties filed both fully briefed motions that same day. (Pl.'s Mot.; Cross-Mot.).[15] On February 17, 2021, the Honorable Margo K. Brodie referred Defendants' cross-motion for partial summary judgment to the undersigned for a report and recommendation. (Order Referring Mot. dated Feb. 17, 2021). For the reasons below, the Court respectfully recommends the cross-motion be denied.

## DISCUSSION

Defendants contend they are entitled to summary judgment on Thompson's FLSA claim for overtime for two principal reasons. First, they argue the undisputed facts show GCS was unaware of Thompson's off-the-clock hours and thus she is not entitled to compensation for those hours under FLSA. (*See* Mem. at 18, 20–21). And second, Defendants claim GCS is not required to compensate Thompson for off-the-clock work when it had systems in place for her to report such work and she failed to do so. (*Id.* at 19–20). These arguments are meritless.

FLSA section 207(a)(1) mandates that "an employee who works 'in excess of' forty hours" in any given workweek "be compensated for that excess work 'at a rate not less than one and one-half times the regular rate at which he is employed[.]'" *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113–14 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, *and that the employer had actual or constructive knowledge of that*

---

[15] In response to the Order to Show Cause, the parties explained they negotiated an extension of time to brief the motions without seeking Court approval. (Letter dated Feb. 16, 2021, Dkt. No. 50).

11

work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (emphasis added); *accord* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. *The employer knows or has reason to believe that he is continuing to work* and the time is working time." (emphasis added)). "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). Circumstances where an employer knew or should have known employees were working overtime include when

> supervisors observed the employees arriving early to prepare for work and praised the employees for that behavior; where employees verbally alerted their supervisors that they had worked overtime; or where supervisors gave [employees] keys and assigned them work outside of their regular shifts [and] observed them working outside of their scheduled shifts, along with employees inform[ing] their supervisors when they could not take meal breaks [and] when they were working overtime that was not pre-approved, had requests for overtime that was not pre-approved denied, and turned in paperwork and keys to their supervisors at times past when their scheduled shift ha[d] been completed.

*Fangrui Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181, 2021 WL 54085, at *4 (E.D.N.Y. Jan. 6, 2021) (alterations in original) (citations and quotations omitted). The Court finds Defendants fail to demonstrate that they lacked knowledge of Thompson's unrecorded time such that Defendants are entitled to judgment as a matter of law.

Defendants rest their argument on assertions in their Rule 56.1 statement that "Thompson never complained that she was required to work 'off the clock,' that she was not paid for time worked, or that she was not paid at an overtime rate for time worked

12

over 40 [hours] in a week," (Defs.' 56.1 Statement ¶ 20), and that she "never raised a formal grievance or informal complaint about her hours[,] work or pay through her union," (*id.* ¶ 22). For factual support, Defendants cite to the declaration of Frank Camp. (*Id.* ¶¶ 20, 22 (citing Camp Decl. ¶ 16)). Camp's declaration states:

> GCS has no record that Plaintiff Thompson ever complained that she was required to work "off the clock," that she was not paid for time worked, or that she was not paid at an overtime rate for time worked over 40 [hours] in a week. Plaintiff Thompson was never disciplined or threatened with discipline for recording hours she worked that were not part of my [sic] scheduled shifts, nor was she ever directed to "shave" or not enter time for hours worked. Plaintiff Thompson never raised a formal grievance or informal complaint about her hours[,] work or pay through her union. In fact, the first time that GCS learned of Plaintiff Thompson's allegations about allegedly working "off the clock" was when it received her Complaint after her employment terminated.

(Camp Decl. ¶ 16). In other words, the Rule 56.1 statement mischaracterizes the factual record. The record does not provide that "Thompson *never complained* [to GCS] that she was required to work 'off the clock'" because Camp's declaration only states "GCS *has no record*" of any complaint. And even if the Court did credit Defendants' claim, it

13

is directly contradicted by Thompson's affidavits.[16] Thompson avers she filled out "several" written forms to correct her time entries but her managers did not make the corrections, (Thompson II Decl. ¶ 3), she verbally complained to her managers at GCS about off-the-clock work but no action was taken, (*id.* ¶ 4), and she did complain to her union, (*id.* ¶ 6). This tension between the competing versions of the facts, neither of which can be credited over the other, can only be resolved at trial. Summary judgment is inappropriate. *Kuebel*, 643 F.3d at 365 ("We conclude that Kuebel has raised a genuine issue of material fact as to whether B & D knew he was working off the clock. Kuebel testified that on several occasions, he specifically complained to his supervisor, Davolt, that he was working more than forty hours per week but recording only forty."); *Viera v. City of New York*, No. 19-CV-5773, 2021 WL 68982, at *6 (S.D.N.Y. Jan. 8, 2021) (denying summary judgment on FLSA overtime claim where the employer's

---

[16] Defendants separately argue Thompson's two affidavits are insufficient to rebut their motion because they are self-serving, "virtually identical" to the Complaint, and offer no supporting evidence. (Mem. at 21). A plaintiff's testimony alone is sufficient to defeat summary judgment except in the narrow circumstance where her "testimony is so problematic no reasonable juror could credit it." *See Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020), *petition for cert. filed*, No. 20-1788 (U.S. June 21, 2021). Defendants do not argue—nor does the Court find—Thompson's testimony is so problematic it cannot be credited. Thompson's declarations, even absent additional proof, are sufficient to defeat summary judgment. *See, e.g.*, *Vargas v. APL Ltd.*, 431 F. Supp. 3d 82, 91 & n.12 (E.D.N.Y. 2019) (denying summary judgment where the court was presented with "the self-serving testimony of a plaintiff, contradicted only by the equally self-serving statements of [the defendants]"). Further, Defendants' cases, (Mem. at 21), are inapposite: in *Belpasso v. Port Authority of New York & New Jersey*, the *pro se* plaintiff failed to submit a 56.1 statement at all and thus the Court reviewed the entire record, No. 07-CV-3627, 2009 WL 10703182, at *9 (S.D.N.Y. Sept. 17, 2019), *report and recommendation adopted*, 2009 WL 10703181 (Sept. 30, 2009), *aff'd*, 400 F. App'x 600 (2d Cir. 2010). And in *Rodas v. Town of Farmington*, the plaintiff raised issues on appeal that were unsupported by *any* document besides the complaint. 567 F. App'x 24, 27 n.3 (2d Cir. 2014).

actual or constructive knowledge of the employee's off-the-clock work was disputed by employee).[17]

Defendants also contend that, because GCS had an established timekeeping system in place that Thompson failed to utilize, it is entitled to summary judgment. (Mem. at 19–20). This argument is frivolous. Defendants' position has been flatly rejected by the Second Circuit. In this Circuit, "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." *Kuebel*, 643 F.3d at 363. That is, if an employer knows or has reason to know an employee is working overtime, the employer has a responsibility to pay wages for those hours even if the employee does not record her hours properly or in accordance with its established systems. *See id.* at 363–64 ("A contrary conclusion would undermine the remedial goals of the FLSA, as it would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime."); *see also, e.g., Furk v. Orange-Ulster BOCES*, No. 15-CV-6594, 2019 WL 4739140, at *9 & n.13 (S.D.N.Y. Sept. 27, 2019) ("Plaintiff has proffered sufficient evidence to suggest that Defendant knew or should have known

---

[17] And with respect to the single note in Thompson's time records indicating a manual correction to her time entries, (Timecard at 4 ("In Time Note: locked out of my computer had to change seats")), this only demonstrates that she did complain or take issue with time recording, not the opposite. If anything, the document could be used by Defendants to undercut Thompson's credibility about not being compensated for discrepancies. But it is not a basis to grant summary judgment. *See, e.g., Kuebel*, 643 F.3d at 365 (reversing grant of summary judgment in favor of employer where "[t]he district court discounted Kuebel's testimony, relying on the fact that he never lodged a formal complaint using B & D's anonymous reporting hotline" and explaining "while that fact might conceivably hurt Kuebel's credibility at trial, it does not warrant summary judgment").

15

about her uncompensated work. Thus, her failure to utilize BOCES' established process for reporting and seeking compensation for overtime hours does not entitle Defendant to summary judgment on the unpaid wages claims.").

Defendants' authorities are inapposite or inapplicable. Many of the cases in their opening brief holding that an employee must follow established timekeeping procedures to state an overtime claim are from outside the Second Circuit. (*See* Mem. at 19–20). The law, as explained, is to the contrary in his Circuit. As for the two cases within the Second Circuit, the reasoning in *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007), (Mem. at 20), suggesting that an employee must follow timekeeping procedures was rejected by the Court of Appeals in *Kuebel*, 643 F.3d at 362–63 ("We disagree with [*Seever*'s] approach."). And *Edwards v. City of New York*, (Mem. at 20), stands for a different proposition altogether; in that case, the Southern District of New York granted summary judgment in favor of the defendants where the plaintiffs did not "produce any evidence that the defendant had actual or constructive knowledge of uncompensated overtime." No. 08-CV-3134, 2012 WL 1694608, at *4–5 (S.D.N.Y. May 15, 2012). In other words, summary judgment was granted not because there were systems in place to record that overtime, but because the plaintiffs failed to demonstrate their employer's awareness of unrecorded overtime. *See id.* The Court found that "[s]ome plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked," but it also found that fact alone "[wa]s insufficient to impute knowledge to the

16

defendant that the plaintiffs were performing uncompensated overtime work." *Id.* at *4.[18]

The cases Defendants cite in their reply, (GCS Defs.' Reply Mem. of Law in Supp. of Mot. dated Feb. 16, 2021 ("Reply"), Dkt. No. 63, at 4), are similarly of no moment. Two are decisions on motions to decertify a FLSA collective: *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014), and *Seward v. International Business Machines Corp.*, No. 08-CV-3976, 2012 WL 13059788 (S.D.N.Y. Jan. 20, 2012), *report and recommendation adopted*, 2012 WL 860363 (Mar. 9, 2012). And summary judgment was denied in *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) ("Mobility's motion for summary judgment, however, is denied, and the named plaintiff, Ms. Zivali, may therefore proceed to trial.").

Separately, there is a genuine dispute as to whether Thompson utilized GCS's timekeeping systems. As outlined above, Thompson says she followed company procedures about making written corrections to her time entries, raised complaints with her managers at GCS, and raised complaints with her union. (*See* Thompson II Decl. ¶¶ 3–4, 6). This too makes summary judgment inappropriate.

Throughout their papers, Defendants also insinuate they are entitled to summary judgment because they have demonstrated it was not in their interest to permit employees to work off-the-clock. (*See, e.g.*, Mem. at 1, 4, 13; Reply at 1, 4). Pursuant to

---

[18] To the extent that GCS contends that because Thompson did not record her time properly it lacked knowledge of time she worked, there is still no basis to grant summary judgment. Thompson's declaration detailing the complaints she made about the timekeeping systems provides a plausible basis to conclude that GCS knew she was working when the systems did not record time.

17

GCS's contract with the New York City Transit Authority, it was paid for time worked and reported by GCS employees. (Defs.' 56.1 Statement ¶ 3; Camp Decl. ¶ 3 ("GCS . . . has no incentive whatsoever for its customer care associates to work 'off the clock' because, as a result, GCS would receive less revenue for the same services performed.")).[19] And according to GCS, this meant there was no incentive to not report time correctly, since it would mean less money for GCS itself. But this is not a cognizable basis for summary judgment. This lack of motivation to under-record time in violation of FLSA does not mean that, as a matter of law, no employee could ever have been underpaid. And it certainly does not mean that an employer is entitled to summary judgment, in the face of an employee's specific averments that she worked and was not paid for that work. The reasons for the discrepancies could be manifold, and it is perhaps illogical for a company to underpay its employees and thereby do damage to its bottom line. But it would not be the first time a defendant employer cut its nose to spite its face or where the incentives and motivation of a corporation writ-large did not manifest at the supervisory levels or align with the law. These are issues that cannot be resolved at summary judgment when there are facts suggesting that GCS's incentives, in actuality, failed to translate accurately or lead to legal compliance.

Because the Court recommends denial of the motion for summary judgment on the merits, it need not reach Thompson's request to deny the motion as premature in accordance with Rule 56(d). The Court notes that Thompson's request failed to include a supporting "affidavit or declaration" explaining the nature of uncompleted discovery

---

[19] The Court deems this fact admitted; in response, Thompson stated she possessed "[i]nsufficient information to admit or deny" it, (Pl.'s 56.1 Statement ¶ 3), which constitutes an admission, *Whitehurst*, 998 F. Supp. 2d at 248.

18

and that discovery's impact on the motion. The Court warned Thompson this was a prerequisite to any Rule 56(d) request when it denied her motion to bifurcate briefing on the collective certification and summary judgment motions. (Order dated Jan. 19, 2021). Instead, Thompson listed her reasons in her opposition brief, (Mem. of Law in Opp'n to Defs.' Cross-Mot. for Partial Summ. J. dated Feb. 2, 2021, Dkt. No. 60, at 3–5), which is insufficient to defeat or delay summary judgment, *e.g.*, *1077 Madison St., LLC*, 954 F.3d at 464.

## CONCLUSION

For the reasons stated, the Court respectfully recommends the motion for partial summary judgment be denied.[20] Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

---

[20] Defendants indicate they intend to make additional motions for summary judgment. (Mem. at 22 (noting they "reserve their right to raise that Thompson's claim for willful violation of the FLSA should be dismissed as a matter of law"), 1 n.1 ("The GCS Defendants are similarly confident of obtaining summary judgment of Thompson's discrimination claims at the end of the discovery process.")). The Court cautions Defendants that, "[o]rdinarily, a movant is limited to a single, timely summary judgment motion[.]" *Miller v. Terrillion*, 436 F. Supp. 3d 598, 601 (E.D.N.Y. 2020); *see also Williams v. King*, 763 F. App'x 36, 37 (2d Cir. 2019).

SO ORDERED.

*/s/ Sanket J. Bulsara* July 21, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York