UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

STEPHANIE THOMPSON, *on behalf of herself and others similarly situated*,

                            Plaintiff,

            v.

GLOBAL CONTACT SERVICES, LLC, EUGENE OHEMENG, FRANK CAMP, ANTOINETTE CURRIE, and JAMIE HOFFMAN,

                            Defendants.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-651 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Stephanie Thompson, on behalf of herself and others similarly situated, commenced the above-captioned action against Defendants Global Contact Services, LLC ("GCS"), Eugene Ohemeng, Frank Camp, Antoinette Currie, and Jamie Hoffman[1] on February 5, 2020, asserting claims for recovery of unpaid wages, overtime wages, liquidated damages, interest, and reasonable attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL") against GCS and Individual Defendants, and claims for discrimination in violation of New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. (the "NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. (the "NYCHRL") against all Defendants.  (Compl.,

---

[1]  The Court refers to Camp, Currie, and Hoffman collectively as the "Individual Defendants."

Docket Entry No. 1.)[2]  Plaintiff also asserted claims for battery and intentional infliction of emotional distress against Ohemeng.[3]  (*Id.* ¶¶ 123–135.)

On November 12, 2020, GCS and Individual Defendants collectively moved for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to Plaintiff's NYLL claim.  (Defs.' Mot. for J. on the Pleadings ("Defs.' Mot."), Docket Entry No. 32; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 33.)  Defendants argue that Plaintiff's NYLL claim is barred by the final judgment and order entered in connection with a prior class action settlement.  (Defs.' Mem.)  Plaintiff opposes Defendants' motion.  (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 35.)  For the reasons set forth below, the Court grants Defendants' motion.

I.   **Background**

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

a.   **Plaintiff's employment**

GCS owns and operates a call center that "contracts with Access-A-Ride . . . a program [that] provides transportation services to individuals with disabilities or health problems" who cannot use public transportation.  (Compl. ¶ 23.)  Plaintiff was employed as a call center representative at GCS from January 7, 2019, until September of 2019, (*id.* ¶ 24), and was regularly required to work "in excess of [ten] hours per day and [forty] hours per week" without

---

[2]  Because the Complaint does not have page numbers, the Court refers to the pagination assigned by the electronic filing system.

[3]  Plaintiff dismissed her claims against Ohemeng on August 4, 2021.  (*See* Notice of Dismissal, Docket Entry No. 71.)

being paid regular, overtime, and spread-of-hours pay, (*id.* ¶¶ 79, 86).[4]  Plaintiff usually worked

eleven hours per day, four days a week.  (*Id.* ¶ 25.)  Plaintiff was typically required to work

Friday through Monday from approximately 6:55 AM until 6:00 PM.  (*Id.*)

> **b.   GCS's timekeeping and payroll policies**

Plaintiff contends that GCS's "timekeeping and payroll policies" resulted in a reduction

of her paid hours.  (*Id.* ¶ 27.)  "GCS uses two separate systems to track employees' hours" — an

"ADP" system and a system that tracks employees' time through their phones.[5]  (*Id.* ¶ 28.)  Any

mismatch in time between the two systems is "resolved against workers."  (*Id.*)  To log her hours

each day on ADP, Plaintiff would "have to log in to both of these systems prior to having [her]

time recorded for the day."  (*Id.*)  The process of logging in to the timekeeping systems "would

often take several minutes every day" for which Plaintiff was not compensated, (*id.* ¶ 29);

logging in to ADP takes approximately three to four minutes, (*id.* ¶ 30).  GCS employees were

unable to log into ADP more "than [three] minutes before their shift was scheduled to begin" and

if employees "did not complete the log-in process before [one] minute after their shift was

scheduled to begin," their supervisor would be notified.  (*Id.*) When a supervisor was notified,

the employee would not be paid for the first ten minutes of their shift, "and neither would the

time the employee spent being reprimanded for their late log-in."  (*Id.*)

---

[4]  In their Answer, Defendants admit that GCS "contracted with the Metropolitan Transit
Authority and its agency the New York City Transit Authority to operate a call center that
provides services for the Access-A-Ride program."  (Defs.' Answer ¶ 23, Docket Entry No. 18.)
Defendants also admit that Plaintiff began her employment with GCS as a call center
representative on January 7, 2019, and that she was paid $15 per hour.  (*Id.* ¶ 24.)

[5]  Defendants admit that GCS used an ADP timekeeping system and "other systems to
certain track employees' time working."  (*Id.* ¶ 28.)

With respect to the phone tracking system, any time that employees "spent off the phone during their shift would not be counted," even if the employees were in work-related meetings, "training, administrative tasks, bathroom breaks, or any other task." (*Id.* ¶ 31.) Time spent on the phone might also not be counted if employees "took too long on a call, were on hold or getting a busy signal, or had a call drop or a customer hang up." (*Id.*) These incidents also resulted in a disciplinary meeting with their supervisor, "which would result in further unpaid time." (*Id.*) As a result of the complexities of logging into both systems, GCS' policies, and defective equipment used for clocking in and out, Plaintiff was not paid for a "significant amount of time worked" per week. (*Id.* ¶¶ 29–33.) GCS did not record the unpaid time Plaintiff worked nor did they provide Plaintiff with "accurate wage notices and wage statements." (*Id.* ¶¶ 34–35.) To date, GCS continues to employ these timekeeping measures and fails to provide employees with the required wages and preserve payroll records. (*Id.* ¶ 40.)

   c.   **Sexual harassment allegations**

During Plaintiff's employment at GCS, Plaintiff worked on the same floor as Ohemeng, another call center representative. (*Id.* ¶ 42.) Ohemeng frequently teased, made "sexual comments" toward, and made "physical contact . . . in a sexual manner" with Plaintiff. (*Id.* ¶¶ 42–48.) Plaintiff "pushed Ohemeng's hand away and told him to stop, but Ohemeng repeated this behavior on several occasions in spite of Plaintiff's protests." (*Id.* ¶ 44.) Plaintiff complained to supervisors and management about Ohemeng's comments and behavior and her supervisors accused her of being a "troublemaker and problematic employee." (*Id.* ¶ 49.) As Ohemeng's behavior continued, other co-workers were hostile toward Plaintiff for reporting Ohemeng. (*Id.* ¶ 50.)

4

In August of 2019, Plaintiff reported Ohemeng's behavior to the human resources department of GCS. (*Id.* ¶ 51.) On or around August 21, 2019, Plaintiff had a meeting with Currie and Hoffman, two executives at GCS, among others. (*Id.* ¶¶ 12, 14, 51.) "Plaintiff discussed her abuse in detail, stated that she was fearful for her safety, and asked that she be allowed to move to a different floor away from Ohemeng and other co-workers with whom she no longer felt comfortable." (*Id.* ¶ 52.) Plaintiff was told she could not be removed until human resources completed its investigation. (*Id.*) Human resources further informed Plaintiff that she was not to speak to anyone else regarding Ohemeng until after the investigation was complete. (*Id.*) After meeting with human resources, Plaintiff "felt increasingly threatened and uncomfortable around Ohemeng and others on her floor" and filed a report with the New York City Police Department. (*Id.* ¶ 53.) During one of her shifts after her meeting with human resources, Plaintiff was confronted at her desk by her supervisor and a co-worker who asked her why she was still there, "told her she needed to get out, and proceeded to pace behind [her] desk in an aggressive manner until she finished her work." (*Id.* ¶ 54.)

> **d. Actions leading up to and Plaintiff's termination**

On August 29, 2019, Plaintiff emailed the New York City Transit Authority, who contracted with GCS, to inform them that she did not feel comfortable going to work due to Ohemeng and her other co-workers' behavior. (*Id.* ¶ 55.) Plaintiff "resolved to wait for a response to her . . . email before she returned to work." (*Id.* ¶ 56.) On or around August 30, 2019, Hoffman called Plaintiff and told her she would be fired if she did not return to work at GCS. (*Id.* ¶ 57.) During the call, Hoffman stated that Ohemeng had been fired, but Plaintiff later learned Ohemeng was still employed with GCS. (*Id.*) "In or around early September, Plaintiff received a letter from Hoffman dated September 3, 2019." (*Id.* ¶ 58.) The letter

indicated receipt of Plaintiff's August 29, 2019 email, stated that Plaintiff was "informed . . . to keep everything confidential, which [she] declined to do," warned Plaintiff that she was not on approved leave and that "disciplinary action" would be taken if she failed to return to work, and "represented" that Plaintiff's request to change floors away from Ohemeng and other co-workers had been approved.  (*Id.* ¶¶ 58–60.)  After learning from former coworkers that Ohemeng was still employed at GCS, Plaintiff never returned to work.  (*Id.* ¶ 61.)  Plaintiff alleges that she was employed at GCS "until her constructive termination in September [of] 2019."  (*Id.* ¶ 24.)  GCS fired Ohemeng in September of 2019.  (*Id.* ¶ 62.)  Plaintiff contends that she was traumatized by her experiences at GCS and suffers from "extreme stress and depression" as a result.  (*Id.* ¶ 63.)

### e.   Instant lawsuit

On February 5, 2020, Plaintiff filed this suit in federal court.  (*Id.*)  Plaintiff seeks designation as representative of the FLSA collective plaintiffs, designation of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designation of Plaintiff as representative of the class, unpaid wages, liquidated and punitive damages, statutory penalties, interest, attorneys' fees and other costs related to this action, and any other relief the Court deems just and proper.  (*Id.* at 24–25.)

### f.   Prior state court class action and settlement

On October 1, 2019, a class action suit was filed in the New York Supreme Court, Kings County (the "State Court") in which the plaintiffs sought to recover "unpaid spread-of-hours premium pay" and liquidated damages under the NYLL and supporting New York State Department of Labor regulations (the "State Court Class Action").  (State Court Compl. ¶ 29, annexed to Aff. of C.K. Lee in Supp. of Defs.' Mot. ("Lee Aff.") as Ex. 2, Docket Entry No. 36-2.)  The two named plaintiffs were employed by GCS from approximately from February 25,

2017, until on or around May 30, 2017, and from January 7, 2019, until on or around March 8, 2019. (*Id.* ¶¶ 7, 11.) While employed with GCS, the plaintiffs alleged that they were required to work over ten hours per shift and were not provided spread-of-hours premium pay. (*Id.* ¶¶ 19–20, 22–23.) The State Court plaintiffs sought to bring a class claim pursuant to Article 9 of the New York Civil Practice Law and Rules ("CPLR") and defined the class as including "[a]ll current and former hourly customer service employees who work or worked at GCS's Long Island City location between March 1, 2017 through August 6, 2019." (*Id.* ¶ 14.)

On August 6, 2019, the plaintiffs and GCS reached a settlement. (Notice of Settlement ("Notice"), annexed to Aff. of Aaron Warshaw in Supp. of Defs.' Mot. ("Warshaw Aff.") as Ex. B, at 13, Docket Entry No. 34.) On December 6, 2019, the State Court so ordered the notice of the class action settlement and fairness hearing (the "Order Notice"). (Order Notice ¶ 8, annexed to Warshaw Aff. as Ex. E, at 46.) The Order Notice stated that class members could opt out of the settlement or submit written objections to the settlement by sending a signed letter to GCS to be received by January 20, 2020. (*Id.* ¶¶ 7–8.) The Order Notice also stated that the fairness hearing regarding the settlement would be held on March 26, 2020. (*Id.* ¶ 9.)

On March 17, 2020, a fully executed settlement agreement (the "Settlement Agreement") was filed with the State Court. (Settlement Agreement, annexed to Lee Aff. as Ex. 1, Docket Entry No. 36-1.) The Settlement Agreement defines the class as "all current and former customer service representatives who were employed by GCS" from March 1, 2017, through August 6, 2019, "who worked at least one shift of ten hours or more when paid at the minimum wage rate and who [did] not opt-out of the [l]itigation" (the "State Court Class"). (*Id.* ¶¶ 1.5, 1.25.)

Under the Settlement Agreement, "released claims" included: "any and all claims, causes of actions, demands, debts, obligations, damages or liability pursuant to the New York Labor Law and the regulations of the New York State Department of Labor, as well as liquidated damages, interest, attorneys' fees, expenses, and costs related to all such claims."  (*Id.* ¶ 1.24.) The release provision of the Settlement Agreement states that:

> Upon the [f]inal [a]pproval [o]rder being issued, and except as to such rights or claims as may be specifically created by this Agreement, each [c]lass [m]ember who does not [o]pt-out of this Agreement, . . . fully releases and discharges Defendant and its affiliates, subsidiaries (including but not limited to any grandchild entities, great-grandchild entities, and so on), parents (including but not limited to any grandparent entities, great-grandparent entities, and so on), divisions, shareholders, members, predecessors, successors, and assigns, and each of their past and present officers, directors, trustees, fiduciaries, insurers, owners, investors, attorneys, administrators, employees, agents, representatives, shareholders, members, joint employers, predecessors, successors, and assigns, in their individual and official capacities, and all persons or entities acting by, though, under, or in concert with any of them . . . from any and all [r]eleased [c]laims.

(Settlement Agreement ¶ 4.1.)  On May 27, 2020, the State Court granted the unopposed motion for settlement approval and dismissed the lawsuit with prejudice.[6]  (Order Granting Unopposed Mot. for Final Approval of Class Settlement ("Final Approval Order") ¶¶ 1–2, annexed to Warshaw Aff. as Ex. G, at 82.)

---

[6]  Plaintiff and Defendants do not dispute that Plaintiff was a member of the State Court Class and failed to opt out of the Settlement Agreement.  (*See* Defs.' Mem. 1 (stating that plaintiff "did not opt out of, nor did she object to the Settlement Agreement"); Pl.'s Opp'n (arguing only that the scope of release is disproportionately broad and would be prejudicial to class members).)

## II.   Discussion

### a.   Standard of review

In deciding a Rule 12(c) motion, courts apply "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)); *see also Bello v. Rockland County*, 846 F. App'x 77, 78 (2d Cir. 2021) (stating that on a motion for judgment on the pleadings, the court accepts "the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor"); *Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49 (2d Cir. 2019) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." (alteration omitted) (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006))). "In determining a Rule 12(c) motion, the district court may consider 'any written documents attached to' the pleadings, 'materials incorporated in [the complaint] by reference,' and 'documents that, although not incorporated by reference, are integral to the complaint.'" *28th Highline Assocs., L.L.C. v. Roache*, 826 F. App'x 70, 72 (2d Cir. 2020) (alteration in original) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson*, 631 F.3d at 63 (discussing Rule 12(b)(6)) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  However, the court need not accord "a legal conclusion couched as a factual allegation" the same presumption of truthfulness.  *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

> **b.    The Court considers the State Court Class Action Complaint, the Settlement Agreement, the Notice, the Order Notice, and the related State Court orders**

Neither Defendants nor Plaintiff have addressed whether the Settlement Agreement and related filings in the State Court Class Action submitted in support of their moving papers can be properly considered on a motion for judgment on the pleadings.  (*See* Defs.' Mem.; Pl.'s Opp'n.) Attached to the three declarations filed in support of and in opposition to Defendants' motion for judgment on the pleadings are documents that were filed in the State Court Class Action including the State Court Class Action Summons and Complaint, the Settlement Agreement, the State Court orders granting preliminary and final approval of the Settlement Agreement, the Notice, the Order Notice, and the motion papers and affidavits filed in support of the State Court approval motions.  (*See* Warshaw Aff. ¶¶ 2–8; Lee Aff. ¶¶ 3–5; Decl. of Aaron Warshaw in Supp. of Defs.' Reply ("Warshaw Reply Decl.") ¶¶ 2–4, Docket Entry No. 38.)

In deciding motions pursuant to Rules 12(c) or 12(b)(6) of the Federal Rules of Civil Procedure, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) ("Under Federal Rule of Evidence 201, a 'court may judicially notice a fact that is

not subject to reasonable dispute.' . . . 'Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (first quoting Fed. R. Evid. 201(b); and then quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998))).   A court can take judicial notice of state court decisions on a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.  *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006))). A court may take judicial notice of a document for its existence "but not for the truth of the matters asserted." *Roth*, 489 F.3d at 509; *see also Koger v. Richardson*, --- F. App'x ---, ---, 2021 WL 2285226, at *1 n.2 (2d Cir. June 4, 2021) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))).

The Court takes judicial notice of the State Court Class Action Complaint, Settlement Agreement, Notice, Order Notice, and State Court orders granting preliminary and final approval of the Settlement Agreement but declines to take judicial notice of the remaining documents submitted by the parties.[7]   The State Court Class Action Complaint, Notice, Order Notice, and

---

[7]   All of the State Court filings attached to the parties' filings are publicly available on the State Court docket.  *See* Document List, *Finisterre v. Global Contact Services, LLC*, No. 521437/2019 (N.Y. Sup. Ct. 2019), https://iapps.courts.state.ny.us/webcivil/FCASSearch?param=I (enter "521437/2019" in index number field; then click "find cases"; then click index number; then click "show efiled documents").

State Court orders granting preliminary and final approval of the Settlement Agreement can be considered on this motion because they are public court records routinely considered on motions to dismiss.  *See Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (holding that the district court did not err in considering the plaintiff's "Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice"); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that, in deciding a motion to dismiss for failure to state a claim, the court "may also look to public records, including complaints filed in state court"); *Pierre v. Melrose Credit Union*, No. 17-CV-2799, 2018 WL 3057686, at *1 (E.D.N.Y. June 19, 2018) (taking judicial notice of a state court complaint and related loan documents and stating that a court may take judicial notice of state court documents in considering a motion to dismiss); *Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs., LLC*, 275 F. Supp. 3d 411, 413 n.1 (E.D.N.Y. 2017) (taking judicial notice of "relevant filings in the related class action lawsuit, including the amended class action complaint and stipulation of settlement"); *Halstead v. City of New York*, No. 13-CV-4874, 2015 WL 1506133, at *1 (E.D.N.Y. Mar. 31, 2015) (taking judicial notice of a "state court action and the decisions of the state court" because "the state court proceeding . . . is a public record" (footnote omitted)); *White Plains Hous. Auth. v. Getty Props. Corp.*, No. 13-CV-6282, 2014 WL 7183991, at *2 (S.D.N.Y. Dec. 16, 2014) ("Courts in this circuit routinely take judicial notice of complaints and other publicly filed documents." (citing *Rothstein v. Balboa Ins. Co.*, No. 14-1112, 2014 WL 4179879, at *1 (2d Cir. June 25, 2014))); *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (taking judicial notice of a class action settlement notice).

12

The Court also takes judicial notice of the State Court Settlement Agreement because it was filed on the public docket.[8] *Compare In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302 n.3 (S.D.N.Y. 2020) ("Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." (quoting *Deylii*, 2014 WL 2757470, at *4)); *Deylii*, 2014 WL 2757470, at *4 (taking judicial notice of class settlement agreement and settlement notice and stating that "[t]he [c]ourt may take judicial notice of 'public documents on a motion to dismiss to determine whether claims are barred by prior litigation'" (quoting *Cowan v. Codelia*, No. 98-CV-5548, 2001 WL 856606 (S.D.N.Y. July 30, 2001))); *Smith v. DADA Ent., LLC*, No. 11-CV-7066, 2012 WL 4711414, at *2 (S.D.N.Y. Sept. 27, 2012) (taking judicial notice of a state court action and settlement filed in state court to determine whether the suit was barred by the settlement agreement); *Wolson v. Reed Elsevier Inc.*, No. 09-CV-4040, 2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010) (taking judicial notice of settlement agreement filed in multi-district class action case in ruling on motion to dismiss); *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, No. 05-CV-6757, 2006 WL 3771005, at *1 (S.D.N.Y. Dec. 20, 2006) (taking judicial notice of settlement agreement entered

---

[8] At least one district court in this circuit has declined to take judicial notice of a settlement agreement when the parties dispute the terms of and circumstances surrounding a settlement agreement. *See, e.g.*, *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 42 (S.D.N.Y. 2018) (declining to take judicial notice of a settlement agreement because "the parties' submissions on the issue make clear that they vehemently disagree as to which facts the [c]ourt should glean from the [s]ettlement [a]greement" and the court could not "find that the factual purpose for which [the] [p]laintiffs urge the [c]ourt to consider the [s]ettlement would be beyond 'reasonable dispute'" (quoting Fed. R. Evid. 201(b))), *aff'd sub nom. Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72 (2d Cir. 2020). The Court notes that the parties in this case do not dispute the terms of the Settlement Agreement but instead dispute whether Plaintiff's claims arise from the same facts as those in the State Court Class Action. (*See* Defs.' Mem. 3–5; Pl.'s Opp'n 2–6.) Plaintiff also contends that the Settlement Agreement should not be given effect because it is overbroad. (*See* Pl.'s Opp'n 2–6.) Thus, the Court is not presented with a factual dispute regarding the Settlement Agreement that would prevent it from considering these documents on this motion.

into between the parties in connection with litigation that took place in the Southern District of

Florida), *with Cherniak v. Trans-High Corp.*, No. 18-CV-7734, 2020 WL 1047884, at *2

(S.D.N.Y. Mar. 4, 2020) (stating that "[t]he [c]ourt may not take judicial notice of the

[a]greement, because it was not filed on the docket when the [previous action] was terminated,

and is not otherwise available as a public record" and collecting cases); *Cantey v. Mount Vernon

City Sch. Dist.*, No. 16-CV-2669, 2018 WL 3315574, at *4 (S.D.N.Y. July 5, 2018) (declining to

take judicial notice of a settlement agreement on a motion to dismiss and converting the motion

to summary judgment because the settlement agreement was "handled privately between the

parties and not made accessible to the public"); *Ranta v. City of New York*, No. 14-CV-3794,

2015 WL 5821658, at *9 (E.D.N.Y. Sept. 30, 2015) (declining to take judicial notice of a general

release of claims when there was "no indication" that the documents were "filed with a court and

[were] a matter of public record"); *Shakur v. Bruno*, No. 12-CV-984, 2014 WL 645028, at *1–2

(D. Conn. Feb. 18, 2014) (declining to take judicial notice when the defendants "provided no

evidence that either the [s]tipulated [s]ettlement or the [r]elease of [l]iability was filed in the state

case"); *Shahzad v. County of Nassau*, No. 13-CV-2268, 2013 WL 6061650, at *4 (E.D.N.Y.

Nov. 14, 2013) (declining to take judicial notice because the settlement agreement and release

"do not appear in the court's docket" and therefore "neither the [s]ettlement [a]greement nor the

[r]elease is a court document and they are not susceptible to judicial notice").

However, the Court does not take judicial notice of the motion papers submitted in

support of the motions for approval of the Settlement Agreement because they are not necessary

to determine whether Plaintiff's NYLL claim is barred. *See Jones v. New Penn Fin., LLC*, No.

19-CV-1493, 2021 WL 405888, at *3 n.4 (E.D.N.Y. Feb. 5, 2021) ("It was certainly well within

[the magistrate judge's] discretion to decline to take judicial notice of a document that was

14

essentially immaterial.").  The Court also declines to consider any factual allegations in the

affidavits submitted by the parties on this motion because these affidavits are outside of the

pleadings in this case and are not subject to judicial notice.  *See Kaplan v. Wings of Hope*

*Residence, Inc.*, No. 18-CV-2972, 2018 WL 6437069, at *4 (E.D.N.Y. Dec. 7, 2018) (declining

to consider "additional factual assertions" in affidavits submitted on motion to dismiss when the

affidavits "assert[ed] facts in greater detail than those in the complaint" and were not attached to

the complaint, integral to the complaint, or material of which judicial notice can be taken (citing

*Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000))).

     Accordingly, the Court considers the State Court Complaint, Settlement Agreement,

Notice, Order Notice, and State Court orders granting preliminary and final approval of the

Settlement Agreement on this motion.

### c.  Plaintiff's NYLL claim is barred by res judicata

     Defendants argue that Plaintiff's NYLL claim regarding Defendants' alleged failure to

pay Plaintiff the required regular, overtime, and spread-of-hours wages as well as Defendants'

failure to provide accurate wage statements is barred by the Settlement Agreement.[9]  (Defs.'

---

[9]  Defendants use the terms "barred" and "estopped" in arguing that Plaintiff may not
assert her NYLL claim because of the Settlement Agreement and the Court understands
Defendants to be arguing that Plaintiff's NYLL claim is barred by the doctrine of res judicata,
even though they recite and conflate the elements of res judicata and collateral estoppel.  (*See*
Defs.' Mem. 1–4; Defs.' Reply in Supp. Defs.' Mot. ("Defs.' Reply") 1–2, Docket Entry No.
37.)  The Court notes the lack of clarity in the parties' minimal filings.  Collateral estoppel is a
distinct doctrine that "applies not to claims or to causes of action as a whole but rather to issues."
*Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013).  Defendants do not identify any issue
litigated and resolved by the State Court that it seeks to give preclusive effect in the present
action.  (*See* Defs.' Mem.)  In any event, collateral estoppel is not appropriate in this case
because collateral estoppel only applies to issues that have been actually litigated in a prior
proceeding.  *See CIT Bank N.A. v. Donovan*, --- F. App'x ---, ---, 2021 WL 1327216, at *2 (2d
Cir. Apr. 9, 2021) ("Under New York law, issue preclusion will apply only if (1) the issue in
question was actually and necessarily decided in a prior proceeding, and (2) the party against

Mem. 4.)  Defendants contend that Plaintiff is "estopped from asserting all of her NYLL claims in the Complaint" because Plaintiff "failed to opt out [of the Settlement Agreement] and is bound by her waiver of NYLL claims under the [State Court] [S]ettlement [Agreement]."  (*Id.* at 4–5.)  Defendants also argue that Plaintiff is estopped from contesting the fairness and scope of the Settlement Agreement because the fairness issue was already adjudicated by the State Court.[10]  (*See* Defs.' Reply 1–2.)

---

whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding." (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005))); *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (same (quoting *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006))); *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) ("Collateral estoppel comes into play when four conditions are fulfilled: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" (quoting *Alamo v. McDaniel*, 841 N.Y.S.2d 477 (App. Div. 2007))); *Rojas v. Romanoff*, 128 N.Y.S.3d 189, 195 (App. Div. 2020) ("Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action" (citing *Buechel v. Bain*, 97 N.Y.2d 295, 303–04 (2001))).  Issues settled by stipulation are not actually litigated for purposes of issue preclusion, *see Singh v. N.Y.S. Div. of Hum. Rts.*, 132 N.Y.S.3d 42, 44 (App. Div. 2020) ("[A]n issue is not actually litigated if it was settled by stipulation." (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985))), *Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) ("[T]he doctrine of collateral estoppel is not applicable since the issues resolved by the stipulation of settlement were never actually litigated." (quoting *1829 Caton Realty v. Caton BMT Assocs.*, 639 N.Y.S.2d 110, 110 (App. Div. 1996))).  Accordingly, because the gravamen of Defendants' argument is that the State Court's dismissal with prejudice following approval of the Settlement Agreement bars Plaintiff's NYLL claim, the Court understands Defendants to be making an argument that Plaintiff's NYLL claim is barred by the doctrine of res judicata and applies that doctrine.

[10]  The Court rejects Defendants' argument that Plaintiff's claims challenging the Settlement Agreement are barred by the *Rooker-Feldman* doctrine.  In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by a state[-]court judgment'; (3) the plaintiff 'invites review and rejection of that judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'"  *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (alterations omitted) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85, 88 (2d Cir. 2005)); *see also Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 609 (2d Cir. 2020) (outlining the *Rooker-Feldman* test).

Plaintiff argues that her claim is not barred because (1) her NYLL claim does not arise

out of an identical factual predicate to the State Court Class Action, (2) the scope of release in

the Settlement Agreement is disproportionately broad, and (3) claims arising under the Wage

Theft Prevention Act (the "WTPA")[11] may not be released in a state court class action.  (*See* Pl.'s

Opp'n 2–5.)  Plaintiff argues that her NYLL claim does not arise from an identical factual

predicate because the State Court Class Action involved claims of "unpaid spread of hours" and

this case involves "claims under the NYLL for Defendants' failure to pay proper wages for off-

the-clock work and failure to provide proper wage statements" as well as a claim for "unpaid

spread of hours."  (*Id.* at 2–3.)  Plaintiff contends that her NYLL claim is premised on the off-

---

*Rooker-Feldman* does not bar Plaintiff's claims because, while dismissals with prejudice arising
from a settlement agreement appear to function as final judgments for *Rooker-Feldman*
purposes, *see Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 110 (E.D.N.Y.
2020) ("As a state court of record, a New York City Housing Court 'stipulation of settlement'
with prejudice constitutes a state court judgment for *Rooker-Feldman* purposes." (citing *Reyes v.
Fairfield Props.*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009))); *Reyes*, 661 F. Supp. 2d at 273
("[A] settlement agreement may constitute a state court judgment for purposes of *Rooker-
Feldman*." (first citing *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006);
and then citing *Lombard v. Lombard,* No. 00-CV-6703, 2001 WL 548725, at *4 (S.D.N.Y. May
23, 2001))); *Robinson v. Cusack*, No. 05-CV-5318, 2007 WL 2028112, at *4 (E.D.N.Y. July 11,
2007) ("Courts . . . have treated settlement agreements as final judgments for the purpose of the
*Rooker-Feldman* doctrine." (citing *Allianz Ins. Co. v. Cavagnuolo*, No. 03-CV-1636, 2004 WL
1048243, at *6 (S.D.N.Y. May 7, 2004))), Plaintiff commenced this action on February 5, 2020,
(*see* Compl.), prior to the State Court's final approval of the Settlement Agreement and dismissal
order on May 27, 2020, (*see* Final Approval Order).  Accordingly, *Rooker-Feldman* does not bar
Plaintiff's claims.  *See Levin v. Barone*, No. 14-CV-673, 2018 WL 1626526, at *3 (S.D.N.Y.
Mar. 29, 2018) ("The *Rooker-Feldman* doctrine does not apply here because the state court
judgment was not entered before this action commenced."), *aff'd*, 771 F. App'x 39 (2d Cir.
2019).

[11]  "The Wage Theft Prevention Act . . . amended the NYLL to require employers to
provide wage notices to employees and to give employees a private cause of action if employers
fail to do so."  *See Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 102 n.5
(W.D.N.Y. 2019) (citing *Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL
3701687, at *5 (E.D.N.Y. May 31, 2017))).

the-clock hours "that were unpaid, not for the [on-the-clock] hours that revealed employees were

not paid their spread of hours premium." (*Id.* at 3.)

Federal courts have "consistently accorded preclusive effect to issues decided by state

courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). "Under the doctrine of *res judicata*, or claim

preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in [the previous] action . . . .'"

*Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (first alteration in original) (quoting *SEC*

*v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Brown Media Corp. v.*

*K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017); *Worthy-Pugh v. Deutsche Bank Nat'l Tr.*

*Co.*, 664 F. App'x 20, 22 (2d Cir. 2016) (affirming a district court's decision granting a

defendant's motion to dismiss where the district court found that the plaintiff's action was

precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-

court judgments whenever the courts of the [s]tate from which the judgments emerged would do

so . . . ." *Allen*, 449 U.S. at 96. To prove claim preclusion under New York law, a defendant

must show that "(1) the previous action involved an adjudication on the merits; (2) the previous

action involved the [same adverse parties] or those in privity with them; and (3) the claims

asserted in the subsequent action were, or could have been raised, in the prior action." *Marcel*

*Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration

in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see*

*also Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) ("One linchpin of res judicata is

an identity of parties actually litigating successive actions against each other: the doctrine applies

only when a claim between the parties has been previously 'brought to a final conclusion'"

18

(quoting *City of New York v. Welsbach Elec. Corp.*, 9 N.Y.3d 124, 127 (2007))); *Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to res judicata).

###     i.   The State Court Settlement Agreement constitutes a final judgment on the merits

The State Court Class Action resulted in a decision on the merits because the State Court dismissed the action with prejudice based on the Settlement Agreement.[12]  (*See* Final Approval Order ¶¶ 1–2 (granting final approval of the class action settlement and dismissing the litigation without prejudice)); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 110 (E.D.N.Y. 2020) ("Under New York law, a stipulation with prejudice is accorded the same preclusive effect as a final judgment on the merits." (citing *Northshore-Long Island Jewish Health Sys., Inc. v. Aetna U.S.*, 811 N.Y.S.2d 424, 426 (App. Div. 2006))); *Schwartz v. Schwartz*, No. 16-CV-162743, 2017 WL 4023132, at *6 (E.D.N.Y. Aug. 28, 2017) ("The Second Circuit has confirmed that, '[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes.'" (alteration in original) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002))), *report and recommendation adopted*, 2017 WL 4023129 (E.D.N.Y. Sept. 12, 2017); *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *11 (S.D.N.Y. June 29, 2016) ("With regard

---

[12]  Although Plaintiff commenced this litigation on February 5, 2020, (*see* Compl.), before the State Court approved the stipulation of dismissal with prejudice on May 24, 2020, (*see* Final Approval Order), the State Court dismissed the case with prejudice before any judgment in this suit, making it a prior final judgment for res judicata purposes.  *See Levin*, 2018 WL 1626526, at *4 ("Although this action may have been filed on the same day as, or before, the [a]ction for a [d]ivorce, . . . it is undisputed that a judgment on the merits has been entered in the state court proceeding, whereas no such judgment has yet been entered in this action.  Because the first judgment was entered in the divorce proceeding, res judicata attaches to that judgment.").

to the first requirement for *res judicata*, a final judgment on the merits, '[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes.'" (alteration in original) (quoting *Marvel Characters*, 310 F.3d at 287)). Accordingly, Defendants satisfy the first factor.

> ## ii.   The parties are in privity with the State Court Class Action parties

Defendants have satisfied the second factor — whether the previous action involved the same adverse parties or those in privity with them — because privity exists between the State Court Class Action plaintiffs and Plaintiff in the instant action.

The privity inquiry turns on "whether, under the circumstances, the interests of the [defendant] were adequately represented in [the earlier action]." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (alterations in original) (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).  New York law provides that privity extends to parties "who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)); *see also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *6 (E.D.N.Y. Mar. 11, 2016) (finding that the defendants, who were not named in a state court foreclosure action, were in privity with the state-court plaintiff because of their alleged interests in the federal plaintiff's/state-court defendant's mortgage); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (same); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 & n.11 (E.D.N.Y. 2010) (same).  Identity of parties exists under New York law when plaintiffs were members of a previous class but failed to opt out of that class. *See Siegel v. Competition*

*Imports, Inc.*, 745 N.Y.S.2d 701, 702 (App. Div. 2002) ("[P]laintiffs were members of the class but failed to opt out.  Therefore, they are bound by the [f]ederal judgment."); *see also Marin v. Comenity Bank, LLC*, No. 16-CV-737, 2017 WL 3670030, at *4 (E.D.N.Y. July 11, 2017) ("[T]he litigants are the same parties: the defendant . . . is the defendant named in the [previous] class action lawsuit, . . . and the plaintiff, although not named, received notice of the settlement and did not opt out, thereby binding her as a member of the class.").

While Plaintiff was not a named plaintiff in the State Court Class Action, the parties do not dispute that Plaintiff was a member of the State Court Class and failed to opt out of the class or object to the Settlement Agreement.  (*See* Defs.' Mem. 1 (stating that plaintiff "did not opt out of, nor did she object to the Settlement Agreement"); Pl.'s Opp'n 3–5 (arguing only that the scope of release is disproportionately broad and would be prejudicial to class members).)  The State Court Class consisted of "all current and former customer service representatives who were employed by GCS at the Long Island City, New York call center located at 3300 Northern Boulevard, Long Island City, [New York]" from March 1, 2017, through August 6, 2019, "who worked at least one shift of ten hours or more when paid at the minimum wage rate . . . and who [did] not opt-out of the [l]itigation."  (Settlement Agreement ¶¶ 1.5, 1.25.)  Plaintiff worked at GCS from January 7, 2019, until September of 2019 as a "call center representative[], handling calls from Access-A-Ride customers."  (Compl. ¶ 24.)  Plaintiff routinely worked eleven hours per day for four days per week and earned $15 per hour.  (*Id.* ¶¶ 24–25.)  Because Plaintiff was a class member, Plaintiff's interests were represented by the State Court Class Action plaintiffs and accordingly was in privity with them.  *See Marin*, 2017 WL 3670030, at *4 (finding that the plaintiff was in privity with the class plaintiffs in a previous case when "the plaintiff, although not named, received notice of the settlement and did not opt out, thereby binding her as a

member of the class"); *Rosado-Acha*, 2016 WL 3636672, at \*16 (finding that the plaintiff was in

privity with the class plaintiffs in the previous litigation because the plaintiff "was a member of

the [previous] class and the [c]ourt identifie[d] no ground on which . . . [the] [p]laintiff's

interests were not aligned with those of the earlier [c]lass"); *see also Vargas v. Cap. One Fin.

Advisors*, No. 12-CV-5728, 2013 WL 4407094, at \*3 (S.D.N.Y. Aug. 15, 2013) (finding privity

in the federal res judicata context when "[t]here is no dispute that [p]laintiff is within the

definition of the [s]ettlement [c]lass as certified in the [previous] action and did not opt out of the

settlement"), *aff'd*, 559 F. App'x 22 (2d Cir. 2014).

    Similarly, Defendants are in privity with the State Court defendants.  GCS was a

defendant in the State Court Class Action.  (*See* State Court Compl. 1.)  Although the Individual

Defendants were not defendants in the State Court Class Action, they were in privity with GCS

as executives of GCS who "exercised operational control over GCS and the terms and conditions

of [Plaintiff's] employment."  (Compl. ¶¶ 10, 12, 14–15); *see also Syllman v. Nissan*, 794

N.Y.S.2d 351, 352 (2005) (finding privity between corporate defendant and its "board of

directors, individual members, and attorneys" when the conduct arose "out of the same dispute

that gave rise to the [previously litigated] claims"); *Briggs v. Chapman*, 863 N.Y.S.2d 97, 99

(App. Div. 2008) (finding privity between the corporate defendant and parties who are "officers,

shareholders and/or owners of [d]efendant [c]orporation" (alterations in original) (quoting

*Specialty Restaurants Corp. v. Barry*, 653 N.Y.S.2d 972 (App. Div. 1997))); *Specialty

Restaurants Corp.*, 653 N.Y.S.2d at 973 (finding privity when the defendant was the president,

shareholder and director of the corporate defendant in the previous litigation); *37-01 31st Ave.

Realty Corp. v. Safed*, 861 N.Y.S.2d 561, 564 (Civ. Ct. 2008) (finding privity between the New

York City Corporation Counsel on behalf of the New York Police Department and the District

Attorney's Office because "[b]oth the District Attorney's office and the [c]orporation [c]ounsel are under the aegis of the government of the City of New York" and the "[c]orporation [c]ounsel was effectively working on behalf of the New York City Police Department"), *aff'd*, *appeal dismissed sub nom. 37-01 31st Ave. Realty Corp. v. Mohammed*, 906 N.Y.S.2d 679 (Sup. Ct. 2010).

In addition, the Settlement Agreement explicitly barred claims by class members against GCS and its "divisions, shareholders, members, . . . employees, agents, representatives, shareholders, members, joint employers, predecessors, successors, and assigns, in their individual and official capacities, and all persons or entities acting by, [through], under, or in concert with any of them."  (Settlement Agreement ¶ 4.1(A).)  Although the Individual Defendants were not explicitly named in the Settlement Agreement, Plaintiff alleges that they each were "an executive of GCS and/or otherwise an owner, member, officer, director, and/or manager of GCS," (Compl. ¶¶ 10, 12, 14–15), thus as employees and agents of GCS, they were released from liability by the Settlement Agreement.  *See Alexandrou v. Fromkin*, No. 11-CV-5240, 2014 WL 3732742, at *4 (E.D.N.Y. July 25, 2014) (finding that the plaintiff unambiguously released its claims against the defendant when the release was executed in favor of a company's "former and present shareholders, members, officers . . . , directors, agents, representatives, predecessors, successors, assigns, parent companies, affiliates, employees and attorneys" and the defendant was a former employee and president of the company); *Barone v. Marone*, No. 04-CV-2001, 2007 WL 4458118, at *4 (S.D.N.Y. Dec. 14, 2007) (finding a general release "unambiguous" when the releasees included "'present and former' agents and representatives" of a company and the defendant was an employee of that company).  Such release suggests that the Individual Defendants were in contractual privity with GCS in the State

23

Court Class Action. *See Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir. 2000) (per curiam) (stating that the issue of whether a settlement agreement precludes a subsequent suit is a question of "contractual privity, not of preclusion privity"); *see also Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 522 n.6 (2d Cir. 2009) (finding no privity when "[t]here is nothing in the present record to suggest that [the plaintiff] intended its releases of [the previous defendant] also to release [the subsequent defendant], a non-party to the [prior litigation]" (first citing *Boguslavsky*, 225 F.3d at 130; and then citing *Zenith Radio Corp. v. Hazeltine Rsch.*, *Inc.*, 401 U.S. 321, 347 (1971))); *Korenblum v. Citigroup, Inc.*, No. 15-CV-3383, 2015 WL 6001275, at *2 (S.D.N.Y. Oct. 14, 2015) ("As the Second Circuit has squarely held, the issue of whether a settlement agreement between a plaintiff and one party bars suit against another party 'is one of contractual privity, not of preclusion privity.'" (quoting *Boguslavsky*, 225 F.3d at 130)); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, No. 95-CV-7900, 2001 WL 38285, at *2 (S.D.N.Y. Jan. 16, 2001) (finding no privity when the parties to the settlement agreement in the first suit did not intend to release the subsequent defendant).[13]

Accordingly, because there is privity between Plaintiff and Defendants in this action and in the State Court Class Action, Defendants satisfy the second res judicata factor.

---

[13]  While the Court is not aware of a case specifically discussing contractual privity and class actions under New York law, the Court nevertheless finds Second Circuit authority instructive on the privity issue. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) ("[T]he federal doctrine uses privity in a way similar to its use under New York law."); *Weaver v. IndyMac Fed. Bank, FSB*, No. 09-CV-5091, 2019 WL 4563893, at *9 (S.D.N.Y. Sept. 9, 2019) (quoting *Chase Manhattan Bank, N.A.*, 56 F.3d at 346); *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *5 (S.D.N.Y. June 29, 2016) ("[T]he [c]ourt must apply New York State preclusion law, though 'there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel.'" (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002))).

### iii.   Plaintiff's NYLL claim arose out of the same transaction as the State Court Class Action

Defendants also satisfy the third factor — whether the claims asserted in the subsequent action were, or could have been raised, in the prior action — because Plaintiff's NYLL claim was among those contemplated in the Settlement Agreement.

"New York law has adopted a 'transactional approach' to [res judicata].  '[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction are barred . . . .'"  *Buczek v. Tirone*, 672 F. App'x 105, 106 (2d Cir. 2016) (alterations in original) (quoting *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007)); *Simmons*, 2020 N.Y. Slip Op. 65897 at 4, 2021 WL 2228828, at *2 ("We have consistently applied a 'transactional analysis approach' in determining whether an earlier judgment has claim preclusive effect, such that 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy'" (quoting *O'Brien v. City of Syracuse*, 445 N.Y.S.2d 687 (1981))); *Rosado-Acha*, 2016 WL 3636672, at *12 ("Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong res judicata applies." (quoting *Yeiser*, 535 F. Supp. 2d at 422)).

Although New York state courts have not articulated a precise rule directing how to apply the transactional approach in the context of class action settlements, New York state cases giving res judicata effect to previously settled class actions based on the express terms of the prior settlement agreement are instructive.  In *People ex rel. Spitzer v. Applied Card Systems, Inc.*, the New York Court of Appeals held that res judicata effect should be given to a prior nationwide class action settlement and therefore that the New York Attorney General should be precluded from recovering certain restitution based on the previous class settlement.  11 N.Y.3d 105, 124

25

n.16 (2008).  Although the decision centered on whether the New York Attorney General should be considered in privity with the class plaintiffs, the New York Court of Appeals instructed that New York courts "look simply to the judgment approving a class action settlement and the nature of the claims released therein to determine the extent to which [a] claim . . . is precluded." *Id.* at 124 n.16.  Similarly, in *Wachovia Mortgage FSB v. Macwhinnie*, the Appellate Division held that a counterclaim-plaintiff was "bound by the terms of the [previous] class action settlement" because the settlement "on its face, precluded him from asserting [his] counterclaims against the [counterclaim-defendant]" and the plaintiff did not opt out of the settlement or challenge adequacy of his representation in the previous suit.  108 N.Y.S.3d 183, 185 (App. Div. 2019).

Plaintiff's NYLL claim is encompassed in the Settlement Agreement release provision. The Settlement Agreement released any NYLL claims that Plaintiff, as a member of the State Court Class, had at the time the Settlement Agreement was approved, because the Settlement Agreement stated that "[u]pon the [f]inal [a]pproval [o]rder being issued," members of the State Court Class who did not opt out of the agreement released "any and all claims, causes of actions, demands, debts, obligations, damages or liability pursuant to the New York Labor Law and the regulations of the New York State Department of Labor, as well as liquidated damages, interest, attorneys' fees, expenses, and costs related to all such claims."  (Settlement Agreement ¶¶ 1.24, 4.1); *see Loccenitt v. Pantea*, No. 12-CV-1356, 2014 WL 7474232, at *3 (S.D.N.Y. Dec. 29, 2014) (finding a release "unambiguous" when the plaintiff "released the City of New York and its 'past and present officials, employees, representatives, and agents' from 'any and all' claims 'that were . . .  asserted, alleging a violation of [the plaintiff's] civil rights . . . from the beginning of the world to the date of [the] [r]elease" and the defendant was an agent of the city as a medical

provider to city inmates); *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 10-CV-4933, 2013

WL 81263, at *4 (S.D.N.Y. Jan. 8, 2013) ("General releases usually cover all claims and

demands due at the time of execution unless specified rights or claims are excluded.").  The

Settlement Agreement was approved on May 27, 2020, (*see* Final Approval Order ¶¶ 1–2), and

therefore Plaintiff released any and all NYLL claims until that date.[14]  Because Plaintiff's claims

are subsumed within the judgment as a result of the Settlement Agreement, Defendants also

satisfy the third res judicata factor.  *See Scheinmann v. Dykstra*, No. 16-CV-5446, 2017 WL

1422972, at *5 n.7 (S.D.N.Y. Apr. 21, 2017) (stating that "enforcement of the settlement also

means that this lawsuit, and all of [the plaintiff's] claims, are subsumed within the judgment, *i.e.*,

effectively dismissed with prejudice" and that res judicata bars the suit as well as the

"contractual protection" in the settlement agreement); *Silvar v. Comm'r of Lab. of State*, 109

N.Y.S.3d 1, 5 (App. Div. 2019) (finding that a subsequent suit was barred by res judicata when

the previous suit brought NYLL claims for failure to pay minimum and overtime wages and the

---

[14]  The fact that Plaintiff commenced the instant litigation on February 5, 2020, (*see* Compl.), prior to the final approval of the Settlement Agreement on May 27, 2020, (*see* Final Approval Order), and before the Settlement Agreement was made effective has no impact on the release of claims provided for in the Settlement Agreement.  *See Braxton/Obed-Edom v. City of New York*, No. 17-CV-199, 2019 WL 8955261, at *4 (S.D.N.Y. Sept. 17, 2019) (finding that settlement agreement barred suit when settlement agreement was signed after federal court litigation commenced and stating that "[t]here is no dispute that [the plaintiff's] claims in this action were pending at the time he signed the [g]eneral [r]elease or that the [g]eneral [r]elease covers the [d]efendants in this action, including the [c]ity and the remaining individual defendants, all of whom are [c]ity employees"), *report and recommendation adopted*, 2020 WL 1303558 (S.D.N.Y. Mar. 19, 2020); *Mateo v. Carinha*, No. 14-CV-9020, 2019 WL 1409727, at *3 (S.D.N.Y. Mar. 28, 2019) (finding that settlement arising from state court suit barred federal court suit when settlement was signed while federal court suit was pending and stating that "[i]t is of no moment that certain other settlement-related documents do not refer to [the federal court suit], or reference solely the action in [the state court suit], because the [g]eneral [r]elease plainly releases any and all claims that [the plaintiff] had against [the] [d]efendant as of February 8, 2017, including those asserted in the instant action"), *aff'd*, 799 F. App'x 51, 53 (2d Cir. 2020) (affirming holding that release barred claims in federal suit when "the present action was filed well before, and remained active, at the time the [g]eneral [r]elease was signed").

class settlement released "all wage-related New York Labor Law claims against petitioners arising on or before . . . the date of the final approval order" when there was "no dispute" that a previous class action release was "legally enforceable, and that claimants' dual wage claims . . . [were] identical to the ones at issue in the release").

Plaintiff's argument that her NYLL claim cannot be precluded because it is not based on the "identical factual predicate" as the NYLL claim presented in the State Court Class Action is unpersuasive.  As a threshold matter, the Court notes that it is unclear whether New York courts require an identical factual predicate for a claim to be released in a class action settlement.[15]  *See Matter of Empire State Bldg. Assoc., LLC*, No. 654456/2013, 2014 N.Y. Misc. LEXIS 3246, at *9 & n.1 (N.Y. Sup. Ct. July 17, 2014) ("Plaintiffs rely heavily on the 'identical factual predicate doctrine' developed by the federal courts for the proposition that a class action release may not bar 'a later claim that requires "proof of further facts" in addition to those at issue of in the settled action.'  This doctrine, applied in the Second Circuit and elsewhere but not New York

---

[15]  The identical factual predicate doctrine is widely used in the context of approval of federal class action settlements pursuant to Rule 23 of the Federal Rules of Civil Procedure.  *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (stating in class settlement approval appeal that "[a]ny released claims not presented directly in the complaint, however, must be 'based on the identical factual predicate as that underlying the claims in the settled class action'" (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982))); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (stating, in appeal from an order approving a class settlement, that "[t]he law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct" (quoting *TBK Partners, Ltd.*, 675 F.2d at 460)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472, at *23 (E.D.N.Y. Dec. 16, 2019) (stating that class plaintiffs "may release claims that were or could have been pled in exchange for settlement relief" but that plaintiffs are limited by the identical factual predicate and adequacy of representation doctrines (internal quotation marks omitted) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 236–37 (2d Cir. 2016))); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 180 (W.D.N.Y. 2011) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 107).

State Courts, can be traced to *TBK Partners, Ltd [v.] Western Union Corp*. . . .  The sole reported New York case at any level referencing the 'identical factual predicate' doctrine is *Cox [v.] Microsoft Corp.* (48 AD3d 215, 850 N.Y.S.2d 103 [1st Dept 2008]), which uses the phrase without citation while describing the objectors' argument."), *aff'd* 21 N.Y.S. 31 (App. Div. 2015).  *But see Fiala v. Metro. Life Ins. Co.*, 899 N.Y.S.2d 531, 537 (Sup. Ct. 2010) (stating that "New York's courts have recognized that its class action statute is similar to the federal statute . . . and have looked to federal case law for guidance" as class settlement approval). Nevertheless, even assuming that the identical factual predicate doctrine applies, the Settlement Agreement satisfies this test because Plaintiff's wage-and-hour-related NYLL claim, like the underlying spread-of-hours NYLL claim in the State Court Class Action, is premised on Defendants' failure to pay call center representatives the requisite wages for hours worked during the period of time covered by the Settlement Agreement.  (*See* State Court Compl. ¶¶ 24–29; Compl. ¶¶ 82–89); *see also Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving a class settlement release and finding that released conduct arose out of the identical factual predicate as the settled conduct when the complaint brought claims for overtime wages and the settlement released claims regarding "minimum wage, overtime pay, wage payments, spread-of-hours payments, failure to pay for all hours worked, failure to provide wage statements and/or wage notices failure to keep appropriate timekeeping and payroll records" and claims that "arise out of or relate to the facts, acts, transactions, occurrence, events or omissions alleged in the [l]awsuit or which could have been alleged in the [a]ction"); *Zorn-Hill v. A2B Taxi LLC*, No. 18-CV-11165, 2020 WL 5578357, at *7 (S.D.N.Y. Sept. 17, 2020) (applying the identical factual predicate rule in the FLSA settlement context and approving a settlement that "while broad, . . . relate[s] specifically to

wage and hour issues without encompassing, for example, prospective [or] discrimination claims").

Because Defendants satisfy all three factors, Plaintiff's NYLL claim is barred under res judicata.[16]  *See Williams v. Marvin Windows & Doors*, 790 N.Y.S.2d 66, 68 (2005) (finding that

---

[16]  Even where the requirements of res judicata have been met, a plaintiff may challenge the preclusive effect of a class action judgment on due process grounds.  *See Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014); *Rosado-Acha*, 2016 WL 3636672, at *12 ("Additional due process considerations inhere in res judicata arguments raised in connection with class actions. . . . '[I]n the context of a class action predominantly for money damages [the Supreme Court has] held that absence of notice and opt-out violates due process.'" (second alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011))); *One Cowdray Park LLC v. Marvin Lumber & Cedar Co.*, 371 F. Supp. 2d 167, 171 (D. Conn. 2005) ("[E]ven where the requirements of res judicata have been met, a plaintiff may have grounds on which to rebut a res judicata defense (such as lack or inadequacy of notice) that would free it from the otherwise preclusive effect of a prior judgment.").  However, Plaintiff has not asserted that she failed to receive notice of the State Court Settlement Agreement or that her due process rights were otherwise violated.  (*See* Pl.'s Opp'n.)

The Court finds Plaintiff's remaining argument challenging the validity of the Settlement Agreement to be meritless.  Plaintiff argues that her WTPA claims may not be released in state court class actions because such claims are "considered penalties" and section 901(b) of the CPLR prohibits plaintiffs from maintaining class-wide penalties "unless a statute creating or imposing a penalty, . . . specifically authorizes the recovery thereof."  (Pl.'s Opp'n 5 (quoting CPLR § 901(b)).)  However, without deciding whether New York law bars class actions premised on WTPA claims, the Court notes that New York courts have held that class plaintiffs may waive the pursuit of such penalties and proceed as a class action.  *See Chaney v. Hermes of Paris, Inc.*, No. 651279/2016, 2018 WL 6586997, at *3 (N.Y. Sup. Ct. Dec. 14, 2018) ("'[A]lthough CPLR 901(b) bars a class action to recover a penalty or minimum damages imposed by statute, where, as here, the statute does not explicitly authorize a class recovery thereof, the named plaintiff in a class action may waive that relief and bring an action for actual damages only.' . . . Such waiver may occur either in the complaint itself or in the motion for class certification." (quoting *Super Glue Corp. v. Avis Rent A Car Sys.*, 517 N.Y.S.2d 764, 767 (App. Div. 1987))).  The Court is not aware of a case, and Plaintiff cites to none, that states that class action plaintiffs may not release future WTPA claims.

Accordingly, in the absence of Plaintiff demonstrating that the Settlement Agreement does not apply to her NYLL claim or that there is a due process violation giving reason to vitiate its effect, the Court finds no basis to decline to uphold the release of Plaintiff's NYLL claim. *See People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 124–25 (2008) ("A similar respect for finality has informed our longstanding rule that — absent exceptional circumstances such as duress, illegality, fraud, or mutual mistake, a settlement must be enforced according to its terms."); *see also In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011)

a state order and judgment disposing of a class action in accordance with a settlement agreement "is res judicata on the plaintiffs' claims in the instant action[,] and the plaintiffs have effected a general release of the appellants in accordance with the terms of the settlement agreement").

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for partial judgment on the pleadings and dismisses Plaintiff's NYLL claim.

Dated: August 4, 2021
      Brooklyn, New York

                         SO ORDERED:

                         _____s/ MKB_____
                         MARGO K. BRODIE
                         United States District Judge

---

("Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so.").

31